HEIDI L. KEEFE (SBN: 178960)
Email: hkeefe@whitecase.com
MARK R. WEINSTEIN (SBN: 193043)
Email: mweinstein@whitecase.com
SAM O'ROURKE (SBN: 205233)
Email: sorourke@whitecase.com
**WHITE & CASE LLP**
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, California 94306
Telephone:  650/213-0300
Facsimile:   650/213-8158

Attorneys for Plaintiff Oplink Communications, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPLINK COMMUNICATIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>O-NET COMMUNICATIONS (SHENZHEN) LIMITED; MULTIWAVE DIGITAL SOLUTIONS, INC.; CHUNMENG WU, AN INDIVIDUAL,<br><br>Defendants. | Case No. C 07-4582 (MJJ)<br><br>**APPENDIX OF AUTHORITIES IN SUPPORT OF MOTION BY OPLINK COMMUNICATIONS, INC. TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES AND DISMISS THEIR COUNTERCLAIMS**<br><br>Date:   November 20, 2007<br>Time:  9:30 a.m.<br>Ctrm:  11, 19th Floor<br><br>The Honorable Martin J. Jenkins |

**APPENDIX OF AUTHORITIES**

<u>CASE</u>                                                                                                                                    <u>TAB</u>

*Advanced Cardivascular Systems, Inc. v. Medtronic, Inc.*
   No. C-95-3577 DLJ, 1996 WL 467293 (N.D. Cal. July 24, 1996) ...........................................1

*Advanced Cardivascular Systems, Inc. v. Medtronic, Inc.*
   41 U.S.P.Q. 2d 1770 (N.D. Cal. 1996) .......................................................................................2

*Grid Systems Corp. v. Texas Instruments, Inc.*
   771 F. Supp. 1033 (N.D. Cal. 1991) ...........................................................................................3

*Network Caching Technology, LLC v. Novell, Inc.*
   No. C-01-2079-VRW, 2001 WL 36043487 (N.D. Cal. Dec. 31, 2001) .....................................4

*Qarbon.com Inc. v. eHelp Corp.*
   315 F. Supp. 2d 1046 (N.D. Cal. 2004) .......................................................................................5

*Security People, Inc. v. Classic Woodworking, LLC*
   No. C-04-3133 MMC, 2005 WL 645592 (N.D. Cal. March 4, 2005) ........................................6

Dated:    October 9, 2007                    Respectfully submitted,

                                             WHITE & CASE LLP


                                             _____/s/ Mark R. Weinstein /s/_____
                                                          Mark R. Weinstein
                                                         Attorneys for Plaintiff
                                                    Oplink Communications, Inc.

Westlaw.

Not Reported in F.Supp.                                                                    Page 1

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648

**(Cite as: Not Reported in F.Supp.)**

Advanced Cardivascular Systems, Inc. v. Medtronic, Inc.;
N.D.Cal.,1996.

United States District Court, N.D. California.
ADVANCED CARDIOVASCULAR SYSTEMS, INC., Plaintiff,
v.
MEDTRONIC, INC., Defendant.
MEDTRONIC, INC., Counter-Claimant,
v.
ADVANCED CARDIOVASCULAR SYSTEMS, INC.; Schneider (Europe) AG; Schneider (USA) Inc.; Tassilo Bonzel; and Paul G. Yock, Counter-Defendants.
**No. C-95-3577 DLJ.**

July 24, 1996.

Timothy J. Malloy, Edward A. Mas II, David D. Headrick, McAndrews, Held & Malloy, Chicago, IL, Leland Hansen, James Haferptepe, McAndrews, Held & Malloy, Chicago, IL, Richard Abramson, Hope L. Hudson, Heller, Ehrman, White & McAuliffe, Palo Alto, CA, for Plaintiff and Counter-Defendants.
Lynn J. Grano, William W. Bunting, Robins, Kaplan Miller & Ciresi, San Francisco, CA, Michael V. Ciresi, Jan M. Conlin, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, Earnest I. Reveal III, Robins, Kaplan, Miller & Ciresi, Costa Mesa, CA, Rita Coyle DeMeules, Kevin Conneely, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, Stewart H. Foreman, Jonathan Polland, Landels, Ripley & Diamond, LLP, San Francisco, CA, Donald L. Rhoads, Leora Ben-Ami, John E. Kidd, Rogers & Wells, New York City, for Defendant and Counter-Claimant.

ORDER
JENSEN, District Judge.
**\*1** On July 10, 1996, the Court heard argument on a motion to deny interpleader and to dismiss counterclaims brought by counterdefendants Schneider (Europe) AG and Schneider (USA) Inc. and joined by counterdefendant Tassilo Bonzel; a motion to dismiss for lack of personal jurisdiction brought by counterdefendant Tassilo Bonzel; and a motion to strike affirmative defenses and dismiss counterclaims

brought by plaintiff Advanced Cardiovascular Systems, Inc. and counterdefendant Paul G. Yock. Timothy J. Malloy, David D. Headrick, and Edward A. Mas II of McAndrews, Held & Malloy and Hope L. Hudson of Heller, Ehrman, White & McAuliffe appeared on behalf of plaintiff Advanced Cardiovascular Systems, Inc. and counterdefendant Paul G. Yock; John E. Kidd, Donald L. Rhoads, and Leora Ben-Ami of Rogers & Wells and Jonathan Polland of Landels, Ripley & Diamond appeared for counterdefendants Schneider (Europe) AG, Schneider (USA) Inc., and Tassilo Bonzel; Michael V. Ciresi, Ernest I. Reveal III, and Lynn J. Grano of Robins, Kaplan, Miller & Ciresi appeared on behalf of defendant Medtronic, Inc.

Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby dismisses with prejudice defendant's counterclaims for interpleader, double patenting, equitable estoppel, and laches and improper delay. Defendant's counterclaim for inequitable conduct against Schneider (Europe) AG and Schneider (USA) Inc. is dismissed with prejudice; however, the inequitable conduct counterclaim against plaintiff is dismissed without prejudice. The Court strikes with prejudice defendant's affirmative defenses for failure to state a claim, equitable estoppel and laches for delay in prosecution, and prosecution history estoppel. The Court strikes without prejudice defendant's affirmative defenses for invalidity, inequitable conduct, and unclean hands and patent misuse.

I. BACKGROUND

A. *Factual Background and Procedural History*

Advanced Cardiovascular Systems, Inc. (" ACS" ) and Medtronic, Inc. (" Medtronic" ) are both companies engaged in developing, manufacturing, promoting, and selling interventional medical devices, including catheters used in percutaneous transluminal coronary angioplasty (" PTCA" ) for treating coronary artery disease.[FN1] These parties and others are currently involved in a complex series of patent infringement suits. The Court has ordered that all of the following cases be related pursuant to Civil Local Rule 3-12(e).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648
**(Cite as: Not Reported in F.Supp.)**

FN1. During a PTCA procedure, a balloon dilatation catheter is carried through the patient's vasculature over a guidewire to a point where deposits, or " lesions," in the coronary arteries have blocked or narrowed the arteries thereby restricting blood flow. Once the catheter is in place, the balloon is inflated to compress or break the material forming the lesion in order to open the restricted artery to improve blood flow.

On October 10, 1995, ACS filed two similar patent infringement suits. The present action, C-95-3577-DLJ, was brought against Medtronic for infringement of Patent Nos. 5,040,548, 5,061,273, and 5,451,233(" the '548 patent," " the '273 patent," and " the '233 patent," respectively). These patents relate to certain kinds of " rapid exchange" catheters that can be used for PTCA. The patents were issued to the inventor, Dr. Paul G. Yock, pursuant to continuation applications relating to an original patent application filed on April 15, 1986. The rights to these patents were subsequently licensed to ACS. ACS alleges that Medtronic's " Falcon" rapid exchange PTCA catheters infringe on one or more claims of the '548, '273, and '233 patents.

**\*2** The second suit ACS filed on October 10, 1995, C-95-3580-DLJ, was brought against SciMed Systems, Inc. (" SciMed" ), for infringement of the '548, '273, and '233 patents, as well as for infringement of U.S Patent No. 5,350,395 (" the '395 patent" ), all of which were issued to Dr. Paul G. Yock between August 20, 1990 and September 19, 1995. Plaintiff alleges that SciMed's " Express Plus" and " Express Plus II" rapid exchange PTCA catheters infringe on the named patents.

On March 12, 1996, ACS filed two actions for infringement of U.S. Patent No. 5,496,346 (" the '346 patent" ).<sup>FN2</sup> One action, C-96-0942-DLJ, was brought against Medtronic, claiming that Medtronic's " Falcon" rapid exchange catheter infringes one or more claims of the '346 patent. The other action, C-96-0950-DLJ, was brought against SciMed, claiming that SciMed's " Express Plus II" and " Leap Express Plus" catheters infringe one or more claims of the '346 patent.

FN2. The '346 patent, entitled " Reinforced Balloon Dilatation Catheter With Slitted Exchange Sleeve and Method," was issued on March 5, 1996 in the names of the inventors, Michael J. Horzewski and Dr. Paul G. Yock. The '346 patent relates generally to rapid exchange balloon dilatation catheters which are used in PTCA for treating coronary artery disease.

On December 21, 1995, Medtronic filed an answer and counterclaim in the present action. On January 4, 1996, Medtronic filed an amended answer and counterclaim. In addition to raising affirmative defenses and counterclaims against ACS, Medtronic asserts counterclaims against Schneider (Europe) AG (" Schneider Europe" ), Schneider (USA) Inc. (" Schneider USA" ), Dr. Tassilo Bonzel, and Dr. Paul G. Yock. These counterdefendants are brought into the suit on the basis of Medtronic's allegation that Dr. Yock's patents, and that the licensees of both Dr. Bonzel and Dr. Yock, Schneider and ACS respectively, have colluded to avoid an interference.

On March 20, 1996, counterdefendants Schneider Europe and Schneider USA filed a motion in this case, C-95-3577-DLJ, to deny interpleader and dismiss Medtronic's counterclaims, and counterdefendant Bonzel filed a motion to dismiss for lack of personal jurisdiction. On the same day, ACS and Yock filed a motion to dismiss the counterclaim and strike affirmative defenses.

B. *Legal Standard*

1. *Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether she is entitled to offer evidence in support of her claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

In answering this question, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow plaintiff to develop her case at this stage of the proceedings. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                                                                                                                                                                        Page 3

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648

**(Cite as: Not Reported in F.Supp.)**

If the Court chooses to dismiss the complaint, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and " that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir.1980) (per curiam)); *see Poling v. Morgan,* 829 F.2d 882, 886 (9th Cir.1987) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)) (futility is basis for denying amendment under Rule 15).

### 2. *Motion to Strike*

**\*3** Federal Rule of Civil Procedure 12(f) provides that " the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

### 3. *Rule 8*

Civil Rule 8(a) requires that a pleading contain " (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claims needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." " The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City National Bank,* 607 F.2d 824, 827 (9th Cir.1979).

### 4. *Rule 9(b)*

Civil Rule 9(b) requires that " In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

### 5. *Interpleader*

Federal Rule of Civil Procedure 22 provides in relevant part:
Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability.... A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim.

Fed.R.Civ.P. 22(1).

### II. ARGUMENTS

Medtronic's First Amended Answer asserts several affirmative defenses against ACS and six counterclaims against ACS, Schneider Europe and Schneider USA (collectively " Schneider" ), Tassilo Bonzel, and Paul G. Yock. Count One is a claim for interpleader under Federal Rule of Civil Procedure 22 between all counterdefendants. Count II alleges double patenting against all counterdefendants. Count III states an equitable estoppel claim against ACS and Schneider. Count IV asserts a claim of inequitable conduct against ACS and Schneider, and Count V alleges laches and improper delay by ACS. Finally, in Count VI, Medtronic seeks declaratory judgment of noninfringement against ACS.

Medtronic has brought these additional parties into the action based on allegations that Dr. Bonzel first patented the procedures claimed in Dr. Yock's patents, and that the licensees of both Dr. Bonzel and Dr. Yock, Schneider and ACS respectively, have colluded to avoid an interference proceeding.

Dr. Bonzel was issued U.S. Patent No. 4,762,129 (" the '129 patent" ), related to rapid exchange catheters that facilitate PTCA, on August 8, 1988. Dr. Bonzel first filed a patent application on this rapid exchange catheter on November 23, 1984 in Germany. He then filed a Patent Cooperation Treaty application on November 15, 1985, designating the United States and claiming the benefit of his earlier 1984 filing date under 35 U.S.C. §§ 119 and 363. Bonzel proceeded to license the rights to the '129 patent to Schneider Europe, which granted a sublicense to Schneider USA.

**\*4** Upon the issuance of Bonzel's '129 patent, ACS and C.R. Bard, Inc. challenged the validity of the patent in the Patent & Trademark Office (" PTO" ). The PTO affirmed the Bonzel patent in a total of four consolidated PTO reexamination proceedings, and Reexamination Certificate B1 4,762,129 issued on July 2, 1991.

While the validity of the '129 patent was being challenged in the PTO, in November of 1988, ACS filed an infringement suit against Schneider in the Northern District of California, C-88-20742-WAI. On August 20, 1991, after the Yock '548 patent issued, ACS filed another infringement suit against Schneider,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 4

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648

**(Cite as: Not Reported in F.Supp.)**

alleging that Schneider's " Monorail Piccolino" rapid exchange catheter infringed the '548 patent. C-91-20507-WAI. In 1991, after the PTO rejected ACS' challenge to the '129 patent, ACS settled with Schneider. As part of the settlement agreement, ACS agreed to pay Schneider $22 million and the parties granted each other non-exclusive cross-licenses.

ACS and Schneider proceeded to file patent infringement suits to protect their respective patents. ACS has filed the actions against SciMed and Medtronic currently pending before this Court, and in 1994 Schneider filed a suit against SciMed for infringement of Bonzel's '129 patent in Minnesota district court. *Schneider (Europe) AG v. SciMed Life Sys., Inc.,* 852 F.Supp. 813 (D.Minn.1994), *aff'd,*60 F.3d 839 (Fed.Cir.), *cert. denied,*116 S.Ct. 520 (1995). In Schneider's case against SciMed, the district court found that the '129 patent was valid, enforceable, and infringed. Consequently, the court issued an injunction against SciMed. The Federal Circuit affirmed the ruling. 60 F.3d 839 (Fed.Cir.), *cert. denied,*116 S.Ct. 520 (1995).

A. *Standing*

Schneider argues that Counts I-IV of the First Amended Answer should be dismissed, because Medtronic lacks Article III standing to assert these counterclaims in federal court.[FN3] More specifically, Schneider claims that Medtronic has not alleged that it has suffered some actual or threatened injury as a result of any conduct on the part of Schneider. Since Medtronic seeks declaratory relief, Schneider argues that Medtronic has failed to allege an objectively reasonable apprehension of suit by Schneider.

> FN3. Dr. Bonzel has joined Schneider's motion to deny interpleader and dismiss counterclaims. Since Medtronic's claims against Bonzel arise out of Schneider's conduct as Bonzel's licensee, the Court's rulings with respect to Schneider also apply to Dr. Bonzel.

In order for a cause of action to be justiciable in federal court, there must be a case or controversy that presents a real and immediate threat of injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130 (1992); U.S. Const., art. III. " Those who do not possess Article III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian College v. Americans United for Separation*

*of Church & State,* 454 U.S. 464, 476-77, 102 S.Ct. 752, 760 (1982). The constitutional prerequisites to standing are (1) an injury in fact which is concrete and not conjectural; (2) a causal connection between the injury and defendant's conduct or omissions, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 112 S.Ct. 2130 (1992). The injury allegedly suffered by the plaintiff must be actual or a real and immediate threat of future injury. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101-102 (1983); *Warth v. Seldin,* 422 U.S. 490, 498 (1975). The burden of establishing standing rests with the party invoking federal jurisdiction. *Id.*

**\*5** Where a plaintiff seeks declaratory relief in the context of patent infringement, courts have used a two-prong analysis to determine whether there is an actual controversy:

First, the defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or have prepared to produce that device.

*West Interactive Corp. v. First Data Resources,* 972 F.2d 1295, 1297 (Fed.Cir.1992) (quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987)), *cert. denied,*479 U.S. 820 (1996).

Medtronic argues that it has a reasonable apprehension of future injury due to Schneider's history of patent infringement suits against ACS and SciMed and due to the settlement agreement and alleged collusion between Schneider and ACS. The Federal Circuit has made it clear that there is no reasonable apprehension of future injury based solely on the existence of an adverse patent. *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 981 (Fed.Cir.1993); *see also Boeing Co. v. Commissioner of Patents & Trademarks,* 853 F.2d 878, 882 (Fed.Cir.1988) (finding that alleged injury from the continued existence of an adverse patent does not constitute injury, because " indistinguishable from any injury that the issuance of the patent might cause the general public" ). Even if a patent holder has demonstrated a willingness to enforce its patent, a plaintiff must show some specific evidence that the patent holder intends to bring suit against the plaintiff. *See West Interactive Corp.,* 972 F.2d at 1298 (holding that although a patent owner's willingness and capacity to enforce its patent rights is pertinent to the

Not Reported in F.Supp.                                                                                      Page 5

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648

**(Cite as: Not Reported in F.Supp.)**

inquiry for an actual controversy, such a showing is not conclusive in the face of evidence that the patent holder never inquired about the plaintiff's activities or infringement); *Boeing,* 853 F.2d at 882 (existence of adverse patent without allegation that patent holder threatened to sue for infringement or acted in such a way to create a reasonable apprehension of suit found insufficient to confer standing). Furthermore, a patent holder's litigation against unrelated third parties does not give an objective reason to fear litigation. *Id.*

Given the fact that Schneider has not directly or indirectly communicated any intention to file suit against Medtronic, the Court finds that there is insufficient evidence of a reasonable apprehension of injury. Therefore, Medtronic does not have Article III standing to bring its counterclaims against Schneider.

### B. *Personal Jurisdiction Over Dr. Bonzel*

Dr. Bonzel makes a special/limited appearance to move the Court to dismiss Medtronic's counterclaims against him for lack of personal jurisdiction. Bonzel resides in and is a citizen of Germany. He does not own, use or possess any property in California. In 1986, Bonzel licensed his '129 patent to Schneider Europe, which in turn sublicensed the patent to Schneider USA. Bonzel is not involved in the manufacture, marketing or sale of his invention in California or elsewhere in the United States, and he has not visited California since 1992.

**\*6** Due process requires that a nonresident defendant have minimum contacts with the forum state such that exercise of personal jurisdiction does not offend notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945).[FN4] Two types of jurisdictional tests have been recognized as satisfying due process concerns: (1) general jurisdiction, a showing that defendant's contacts with the forum are " substantial" or " continuous and systematic," *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 839 (9th Cir.1986); and (2) specific jurisdiction, a showing that " there is a strong relationship between the quality of the defendant's forum contacts and the cause of action." *Id.* (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174 (1985)). In either case, the court must find that the defendant " purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct.

1228, 1240 (1958).[FN5]

> **FN4.** The California long-arm statute extends the reach of personal jurisdiction to the limits of the Federal Constitution. *See*Cal.Code Civ.Proc. § 410.10 (West 1973); *Michigan Nat'l Bank v. Superior Ct.,* 23 Cal.App.3d 1, 6 (1972). Thus, although Medtronic wishes to pursue federal claims against Bonzel, the personal jurisdiction issue would be the same under either the Fifth Amendment or California's long-arm statute.

> **FN5.** Ownership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state besides the District of Columbia. 35 U.S.C. § 293; *see also Williams v. Cannon,* 432 F.Supp. 376, 380 (C.D.Cal.1977) (ownership of trademark does not establish purposeful availment of a California forum).

Medtronic argues that Bonzel has contacts with California sufficient to satisfy the requirements of due process. Medtronic points to three basic types of contacts Bonzel allegedly had with California. First, Medtronic alleges that Bonzel voluntarily came to California on a number of different occasions between 1987 and 1992 for the purpose of attending medical symposia and giving presentations on his catherization technique. Second, defendant alleges that Bonzel actively participated in and received a financial benefit from Schneider's patent infringement action against ACS in this district. Third, Medtronic argues that Bonzel should be subject to suit in California because he purposefully directed his patented product into the California forum.

Medtronic concedes that these contacts are not systematic and continuous enough to justify general jurisdiction over Bonzel in California. Therefore, the only issue is whether the nature of these contacts is sufficiently related to Medtronic's causes of action against Bonzel to confer specific jurisdiction over Bonzel.

Dr. Bonzel's lectures and presentations in California were not specifically related to protection of the '129 patent, which forms the basis of Medtronic's counterclaims. During these events, Bonzel was not marketing or talking about the '129 patent, but rather was giving scientific presentations in his professional capacity as a cardiologist.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 6

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648
(Cite as: Not Reported in F.Supp.)

The second type of contact identified by Medtronic, participation in Schneider's patent litigation, also fails to provide a basis for exercising personal jurisdiction over Bonzel. None of Bonzel's actions in relation to Schneider's litigation demonstrate purposeful availment of this forum. Bonzel was not a party to the litigation between Schneider and ACS and has submitted a declaration stating that he did not direct or plan that litigation. *See* Bonzel Decl. at 2-3. Bonzel also was not a party to Schneider's settlement agreement with ACS and was only made aware of the agreement after it occurred. Bonzel Decl. at 2-3. Although Bonzel has given depositions in California, he received no fees relating to his testimony and was not subject to service while he was in California for that purpose. *See Moylan v. AMF Overseas Corp.,* 354 F.2d 825, 829 (9th Cir.1965) (holding that a forum visit for purposes of a deposition does not establish the type of " purposeful availment" necessary to confer jurisdiction over the deponent).

*7 Medtronic's final argument for this Court's exercise of personal jurisdiction rests upon a " stream of commerce" theory. According to Medtronic, Bonzel should be subject to suit in California because he purposefully directed his patented product towards this forum. It is undisputed that Bonzel licensed his patent to Schneider. However, the forum activities of a licensee cannot support the assertion of jurisdiction over a non-resident patentee, even if the patentee receives royalty payments. *See Bib Mfg. Co. v. Dover Mfg. Co.,* 804 F.Supp. 1129, 1132-34 (E.D.Mo.1992). Moreover, without evidence that Bonzel actually retains some control over the distribution or marketing of the patent, a " steam of commerce" jurisdictional analysis is inappropriate. *See e.g. Seltzer Sister Bottling Co., Inc. v. Source Perrier S.A.,* 19 U.S.P.Q.2d 1898, 1903 (N.D.Cal.1991). Because there is no evidence that Bonzel directed the sales or marketing of the patented product or participated in any way in the distribution of that product, the Court finds that Bonzel did not purposefully avail himself of the benefits of conducting business in California.

Thus, Medtronic has failed to show that any of Dr. Bonzel's contacts with California are strongly related to Medtronic's causes of action against Bonzel. Therefore, this Court lacks personal jurisdiction over Dr. Bonzel.

### C. *Count I: Interpleader*

Medtronic's interpleader claim is based on the allegation that the three Yock patents at issue in this case and Bonzel's '129 patent are interfering patents. Medtronic claims that ACS and Schneider, as the respective licensees of these patents, " have worked in a concert of action to avoid an interference" and have exposed their competitors to multiple liability and inconsistent results. Accordingly, Medtronic argues that interpleader for interference under 35 U.S.C. §§ 291 and 146 is warranted.

Federal Rule of Civil Procedure 22(1) provides that persons having claims against a party may be joined as defendants and required to interplead when their claims are such that the party is or may be exposed to double or multiple liability. Medtronic concedes that the use of interpleader to force an interference proceeding is a novel application of Rule 22. Therefore, the Court must look to the underlying purposes of both interpleader and interference procedures to determine whether Medtronic's interpleader claim is proper.

Interpleader under Rule 22 is an equitable procedure intended to protect a stakeholder from multiple liability and " the vexation of defending multiple claims to the same fund." *Washington Electric Cooperative, Inc. v. Paterson, Walke & Pratt,* 985 F.2d 677, 679 (2d Cir.1993). Therefore, the principle requirement for interpleader is " a real and reasonable fear of double liability or vexatious, conflicting claims." *Id.* (quoting *Indianapolis Colts v. Mayor of Baltimore,* 741 F.2d 954, 957 (7th Cir.1984), *cert. denied,* 470 U.S. 1052 (1985)). The requirement that the claims for which interpleader is sought be adverse to each other is not satisfied where the stakeholder could be liable to both claimants. *Bradley v. Kochenash,* 44 F.3d 166, 168 (2d Cir.1995).

*8 In the present case, the parties Medtronic seeks to interplead do not have clearly conflicting claims. Under 35 U.S.C. § 282, a patent must be presumed valid; therefore, the Court must presume that the Yock patents and Dr. Bonzel's patent are not identical. Since a single product can be found to infringe more than one patent, *Milliken Research Corp. v. Dan River, Inc.,* 739 F.2d 587, 594 (Fed.Cir.1984), it is possible that Medtronic could be liable to both claimants here. Therefore, the claimants' interests are not adverse.

In addition, as discussed with respect to standing, there is not a reasonable likelihood that Medtronic will be subject to a patent infringement claim by Schneider.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 7

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d
648
**(Cite as: Not Reported in F.Supp.)**

Even though Schneider has demonstrated a willingness to enforce its patent against others, Medtronic has failed to provide specific evidence that Schneider intends to bring suit against Medtronic. Without a " real and reasonable fear" of double liability, Medtronic cannot assert an interpleader claim.

Furthermore, as a practical matter, it does not make sense to allow interpleader here. The claimants Medtronic seeks to force into litigation do not believe that they have adverse interests. Adverse claims are necessary to interpleader, because a court cannot force two parties to litigate against each other where the parties do not believe there is a controversy. In the present case, ACS and Schneider assert that their patents are distinct and that they do not wish to engage in an interference proceeding. It is not the role of this Court or a third-party to force them into unwanted litigation.

Congress' intent in authorizing interference proceedings also indicates that Medtronic's interpleader claim is improper. 35 U.S.C. § 291 authorizes a civil action to determine the validity of interfering patents. Congress enacted this section for the explicit purpose of providing relief to " the owner of an interfering patent." By interpleading an interference here, Medtronic is seeking to circumvent § 291's limited grant of standing to patent holders.

In addition, the Code of Federal Regulations provides that applicants may seek to have an interference declared, but that it is within the discretion of the PTO to initiate the interference. *See* 35 C.F.R. §§ 1.603-611. Although 35 U.S.C. § 146 authorizes civil actions to adjudicate interference claims, these actions are only permitted *after* a decision has been rendered by the PTO. *See* 35 U.S.C. § 146 (providing for remedy by civil action where a party is dissatisfied with the decision of the Board of Patent Appeals and Interferences). Thus, Congress intended that the PTO would be the primary arbitrator of interference actions.

In the present case, the PTO was clearly aware of the similarities between the Yock patents and the Bonzel patent; nonetheless, the PTO did not declare an interference.[FN6] To allow Medtronic to interplead an interference where the PTO has decided not to initiate such a proceeding would be contrary to Congressional intent. Since Medtronic's interpleader claim does not meet the requirements for either an interpleader or an

interference, the Court hereby dismisses this counterclaim with prejudice.

> FN6. The same PTO examiner conducted the consolidated reexaminations of the Bonzel patent and the examinations of the applications that resulted in the Yock patents at issue in this case. Each time the PTO considered a new Yock patent application, it considered whether there was an interference with the Bonzel patent. *See* Manual of Patent Examining Procedure § 2301.01(b). Therefore, the PTO clearly was aware of the similarities between the Yock and Bonzel patents.

### D. *Count II: Double Patenting*

**\*9** Schneider argues that Count II should be dismissed, because a legally cognizable double patenting claim requires that the patents at issue be invented by a common inventor or held by a common owner or assignee. Medtronic argues that double patenting is applicable to the present case, because the cross-licenses granted in the settlement agreement between ACS and Schneider " effectively" created common ownership of the Bonzel and Yock patents. In addition, Medtronic argues that the policy considerations underlying the doctrine of double patenting apply to the present case-namely, the prevention of prolonged monopoly and the hazards of harassment from multiple assignees.

The prohibition against double patenting " precludes one person from obtaining more than one valid patent for either (a) the ' same invention,' or (b) an ' obvious' modification of the same invention." *In re Longi*, 759 F.2d 887, 891 (Fed.Cir.1985). Defendant admits that its theory of double patenting is an extension of established doctrine. The Court finds insufficient justification for broadening the concept of double patenting to include " effective" common ownership. Therefore, Medtronic's counterclaim for double patenting is dismissed with prejudice.

### E. *Count III: Equitable Estoppel*

Count III alleges an equitable estoppel claim against Schneider and ACS. Medtronic claims that ACS should be estopped from enforcing any Yock patents containing interfering subject matter, because ACS and Schneider were aware of the existence of interfering subject matter in the Yock patents and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 8

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648
(Cite as: Not Reported in F.Supp.)

failed to determine the priority of the patents. In addition, Medtronic claims that ACS and Schneider knowingly concealed from the PTO and the public the fact that the Yock and Bonzel patents had common subject matter.[FN7] Therefore, Medtronic seeks to estop ACS and Schneider from asserting the Yock and Bonzel patents against Medtronic. Since the Court has found that Schneider was improperly joined as a party in this action, Medtronic cannot raise an estoppel claim against Schneider. Therefore, Count III can only be asserted against ACS.

> FN7. Since ACS is the exclusive licensee of the Yock patents, the Court shall refer to ACS as the party responsible for any communications to the PTO during the prosecution of the Yock patents.

To plead equitable estoppel, a party must allege three essential elements: (1) the party to be estopped, who usually must have had knowledge of the true facts, communicated something in a misleading way, either by words, conduct or silence; (2) the pleading party relied upon that communication; and (3) the pleading party would be harmed materially if the other party is permitted to assert any claim inconsistent with his earlier conduct. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041 (Fed.Cir.1992) (en banc).

Medtronic argues for estoppel against ACS based on the allegation that ACS misled the PTO and the public by claiming that the Yock patents were distinct from the Bonzel '129 patent. This claim is essentially an allegation of inequitable conduct. *See Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988) (holding that the doctrine of inequitable conduct applies where the patent applicant acted inequitably in prosecuting the patent before the PTO, such as deceiving, defrauding, or failing to disclose material information to the PTO), *cert. denied,* 490 U.S. 1067 (1989). Medtronic has not alleged how it relied on ACS' representations to the PTO, and, more importantly, ACS' patent infringement claims are not inconsistent with its representations to the PTO that it had a valid patent. Since the factual basis for this counterclaim does not support an estoppel claim, the Court hereby dismisses Count III of Medtronic's First Amended Answer with prejudice.

*F. Count IV: Inequitable Conduct*

**\*10** Medtronic's counterclaim for inequitable conduct is based on Schneider's and ACS' failure to file a copy of their settlement agreement with the PTO as required by 35 U.S.C. § 135(c) and their avoidance of an interference proceeding in the PTO.[FN8] Again, since the Court has found that Schneider was improperly joined as a party in this action, Medtronic cannot assert a claim of inequitable conduct against Schneider. Therefore, the only issue here is whether this claim is proper with respect to ACS.

> FN8. Medtronic also claims that the Yock patents are unenforceable because of Dr. Yock's unreasonable delay in prosecution. The Court's ruling with respect to Count V applies to this part of Medtronic's inequitable conduct claim.

Paragraph 88 of Medtronic's First Amended Answer alleges that ACS' failure to comply with the filing requirements of 35 U.S.C. § 135(c) renders the Yock patents unenforceable. However, at the July 10, 1996 hearing and in its opposition papers, Medtronic argued that this claim is based on the failure to disclose information material to the patentability of the Yock patents, as required under the general duty of candor to the PTO.

35 U.S.C. § 135(c) requires that " [a]ny agreement or understanding between parties to an interference, ... made in connection with or in contemplation of the termination of the interference, ... be in writing and a true copy thereof filed in the Patent and Trademark Office before the termination of the interference." This statute only requires patent holders to file copies of agreements that settle pre-existing interference proceedings, not settlement agreements related to patent infringement suits. In *Carella v. Starlight Archery,* 804 F.2d 135 (Fed.Cir.1986), the Federal Circuit upheld a district court decision that § 135(c) is inapplicable to the private settlement of a lawsuit, finding that failure to disclose a settlement agreement in the context of an interference proceeding in the PTO is completely different from failure to disclose a settlement of a declaratory judgment action. *Id.* at 140. Given that Medtronic's allegations are based on ACS' failure to disclose the settlement of an infringement action, Medtronic has failed to state a claim for inequitable conduct on this basis.

The failure to disclose the settlement agreement also did not violate the duty of candor to the PTO. The duty of candor is a generalized duty. It cannot create the

Not Reported in F.Supp.                                                                Page 9

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648

**(Cite as: Not Reported in F.Supp.)**

specific duty to disclose a settlement of a patent infringement suit. Therefore, Medtronic cannot state a claim of inequitable conduct based on ACS' failure to disclose its settlement agreement.

With respect to Medtronic's claim that ACS' avoidance of an interference proceeding constituted inequitable conduct, the Court also finds Medtronic's pleading insufficient. The doctrine of inequitable conduct renders a patent unenforceable and thereby provides a defense to a patent infringement suit, if the patent applicant acted inequitably in prosecuting the patent before the PTO. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1067 (1989). Inequitable conduct includes fraud, deception, or failure to disclose material information. *Id.*

**\*11** Under Rule 9(b), fraud defenses must be pled with particularity. Fed.R.Civ.P. 9(b). Rule 9(b) is designed to give an opposing party notice of particular misconduct. *Semegen v. Weidner,* 780 F.2d 727, 731-35 (9th Cir.1985). This court has previously held that Rule 9(b) should be applied to pleadings of inequitable conduct as well. *See Chiron Corp. v. Abbott Labs.,* 156 F.R.D. 219, 220 (N.D.Cal.1994). According to the court's reasoning, " a plain reading of the Federal Rules, the weight of authority, and sound public policy all require that pleadings which allege inequitable conduct before the PTO comply with Rule 9(b)." *Id.*

Medtronic claims that ACS acted inequitably in prosecuting its patents before the PTO, because ACS failed to disclose to the PTO that it was pursuing a patent identical to the '129 patent. Since this allegation is essentially a fraud claim, defendant must plead this claim with the particularity required under Rule 9(b). Accordingly, defendant is required to " state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distributing v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986).

The Court finds that Medtronic's pleading is not sufficiently specific. Not only must Medtronic allege the particulars of what ACS failed to disclose, but Medtronic also must describe the circumstances indicating ACS' intent to mislead the PTO. ACS' failure to state to the PTO that it was trying to obtain an invalid patent does not constitute inequitable conduct, because anyone seeking to obtain a patent

has a right to make good faith arguments in support of their application; however, if ACS failed to disclose information that was pertinent to the determination of whether it was presenting an interfering patent with an intent to deceive the PTO, then Medtronic has grounds for an inequitable conduct claim. Based on the foregoing, the Court hereby dismisses Medtronic's inequitable conduct counterclaim without prejudice. However, Medtronic is only granted leave to amend to state a claim comporting with Rule 9(b) against ACS for failure to disclose information regarding a possible interference.

*G. Count V: Laches and Improper Delay*

Medtronic asserts a counterclaim for laches and improper delay against ACS, based on alleged improper delay and " subterfuge" in the prosecution of the Yock patents. To invoke a defense of laches, a defendant must allege " neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1028-29 (Fed.Cir.1992) (en banc). In the context of patent litigation, " [t]he period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of the suit." *Id.* at 1032. The Federal Circuit has explicitly stated that " the period [of delay] does not begin prior to issuance of the patent." *Id.; see also Stark v. Advanced Magnetics, Inc.,* 29 F.3d 1570, 1576 (Fed.Cir.1994) (" [T]he laches period does not accrue until [the] patent issues ..." ). Since the only delay that can form the basis of a laches defense is delay between the issuance of the patent and the filing of the infringement action, defendant's theory of laches based on delay in prosecution of the patent is not cognizable.

**\*12** Furthermore, since there is no allegation that plaintiff violated any of the statutory or regulatory rules for prosecuting patents, there was no improper delay in the prosecution of this patent to justify a laches defense. The Yock patents issued from a series of " continuation" applications relating back to the original application filed on April 15, 1986. Under 35 U.S.C. § 120, the prosecution of these patents dates back to the filing of the original application. *Transco Prods., Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 556 (Fed.Cir.1994). By providing this relation back doctrine, Congress evidenced a clear intent to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648

**(Cite as: Not Reported in F.Supp.)**

regulate the timing of continuation applications. Accordingly, only Congress can determine what constitutes unreasonable delay in the filing of such an application. It is not for this Court to decide that the prosecution of a patent according to the rules of the PTO is unreasonable and inequitable. Since defendant's laches defense asks the Court to make precisely this determination, the Court hereby dismisses this counterclaim with prejudice.

### H. *Affirmative Defenses*

Medtronic's First Amended Answer asserts the following affirmative defenses: (1) failure to state a claim upon which relief can be granted; (2) invalidity; (3) inequitable conduct; (4) unclean hands and patent misuse; (5) equitable estoppel and laches for delay in prosecution; (6) noninfringement; and (7) prosecution history estoppel. ACS and Dr. Yock move for dismissal of Medtronic's affirmative defenses for inequitable conduct, unclean hands, equitable estoppel and laches for delay in prosecution, and prosecution history estoppel. With respect to the remaining affirmative defenses, ACS and Yock request that the Court either strike the defenses or order a more definite statement pursuant to Rule 12(e).

### 1. *Failure to State a Claim*

Federal Rule of Civil Procedure 12(b) provides that the defense of failure to state a claim upon which relief can be granted may be " asserted in [a] responsive pleading" or " made by motion." If a court finds that the plaintiff has stated a valid claim, however, the court may strike the defense. *See Federal Savings and Loan Ins. Corp. v. Maio,* 736 F.Supp. 1039, 1042 (N.D.Cal.1989).

In order to state a claim of patent infringement, a plaintiff must allege that the defendant makes, uses, offers to sell, or sells the patented invention within the United States, during the term of the patent, and without the authority of the patent holder. *See*35 U.S.C. § 271(a). Plaintiff here has pled that " ACS has an exclusive license under the rights, interest, and legal title" to the '548, '273, and '233 patents, Compl. at ¶¶ 8, 10, 12, and that " Medtronic has manufactured, used, sold, or distributed PTCA catheters ... which infringe one or more claims" of the '548, '273, and '233 patents. Compl. at ¶¶ 15, 20, 25. For purposes of evaluating the sufficiency of pleadings, all averments must be taken as true and construed in the light most favorable to the pleading party. *Pillsbury, Madison &*

*Sutro v. Lerner,* 31 F.3d 924, 928 (9th Cir.1994). Given that plaintiff has alleged the essential elements of patent infringement, the Court finds plaintiff's pleading sufficient and strikes this affirmative defense with prejudice.

### 2. *Invalidity*

**\*13** Medtronic asserts as an affirmative defense that the '548, '273, and '233 patents " are invalid, unenforceable and/or void for failure to meet the requirements of the United States patent laws, including but not limited to 35 U.S.C. §§ 101-112, 120-121, 135, 146, and 291." First Amended Answer at ¶ 28. Under Rule 8 of the Federal Rules of Civil Procedure, an affirmative defense must be pled with the minimal specificity necessary to give the plaintiff " fair notice" of the defense. *Wyshak,* 607 F.2d at 827. Since the sections referred to by defendant provide numerous grounds for finding a patent invalid, defendant must provide a more specific statement of the basis for this defense in order to give ACS fair notice of the claims being asserted. Accordingly, the Court hereby strikes this affirmative defense with leave to amend.[FN9]

> FN9. Defendant should note the Court's ruling on this issue in response to a similar motion brought by ACS in *Advanced Cardiovascular Systems, Inc. v. SciMed Systems, Inc.,* C-96-0950-DLJ. The Court has approved a proposed amended answer submitted by SciMed in response to ACS' motion to strike. The factual specificity of SciMed's amended invalidity defense would be sufficient in this case as well.

### 3. *Inequitable Conduct*

Medtronic's affirmative defense of inequitable conduct states that the '548, '273, and '233 patents are invalid " due to inequitable conduct in connection with the prosecution of those applications before the United States Patent Office." First Amended Answer at ¶ 29. As discussed with respect to Medtronic's counterclaim for inequitable conduct, inequitable conduct must be pled with the specificity required under Rule 9(b). Therefore, defendant is required to " state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distributing v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986). The Court strikes this defense without

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648
**(Cite as: Not Reported in F.Supp.)**

prejudice. However, defendant is only granted leave to amend in compliance with the rulings contained in this Order.

#### 4. *Unclean Hands and Patent Misuse*

To the extent that defendant's affirmative defense for unclean hands and patent misuse rests on allegations of inequitable conduct before the PTO, defendant must plead these defenses with the specificity required under Rule 9(b). With respect to patent misuse, under 35 U.S.C. § 271(d), a patent owner cannot be denied relief or found guilty of misuse simply by reason of seeking to enforce his or her patent. Therefore, defendant must provide a factual basis for alleging that ACS knew the Yock patents were invalid or unenforceable at the time this action was filed. Since defendant's First Amended Answer does not provide any factual basis for this affirmative defense, the Court hereby strikes the defense without prejudice.

#### 5. *Equitable Estoppel and Laches for Delay in Prosecution*

For the reasons discussed with respect to defendant's counterclaim for laches and improper delay in prosecution, the Court hereby strikes this affirmative defense with prejudice.

#### 6. *Prosecution History Estoppel*

Prosecution history estoppel is a defense to the assertion of the doctrine of equivalents. The doctrine of equivalents provides that an accused product which does not literally infringe the claims of a patent may infringe the patent nonetheless, if the differences between the accused product and the claimed invention are so insubstantial that the accused product falls within the patent's " range of equivalence." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1516-22 (Fed.Cir.1995)* (en banc), *cert. granted,116 S.Ct. 1014 (1996).* " The essence of prosecution history estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents, coverage of subject matter that was relinquished during prosecution to procure issuance of the patent." *Hoganas AB v. Dresser Indus., Inc., 9 F.3d 948, 951-52 (Fed.Cir.1993).* Since prosecution history estoppel is only applicable where the doctrine of equivalents has been raised as a means of constructing an infringement claim, prosecution history estoppel is not an affirmative defense.[FN10] Accordingly, the Court strikes with prejudice

Paragraph 33 of Medtronic's First Amended Answer. This ruling, however, does not preclude defendant from raising prosecution history estoppel should plaintiff assert a patent infringement claim based on the doctrine of equivalents.[FN11]

> FN10. In *Carman Industries, Inc. v. Wahl, 724 F.2d 932, 942 (Fed.Cir.1983)*, the court made an off-hand reference to prosecution history estoppel as an affirmative defense. However, the remark was made in the context of finding that a party cannot raise the defense of prosecution history estoppel for the first time on appeal. Therefore, this case does not specifically authorize pleading prosecution history estoppel as an affirmative defense.

> FN11. The Court notes that the parties have violated Civil Local Rule 3-4(c)(2), which requires that the written text of all papers presented to the Court for filing, including footnotes and quotations, be no less than pica size typewriting. In addition, all papers must be double-spaced and contain no more than 28 lines per page. Any violation of these rules is grounds for sanctions. *See* Civil Local Rule 1-4.

### III. CONCLUSION

*\*14* Based on the foregoing, the Court hereby ORDERS as follows:

1. Defendant's counterclaim for interpleader is DISMISSED WITH PREJUDICE.

2. Defendant's counterclaim for double patenting is DISMISSED WITH PREJUDICE.

3. Defendant's counterclaim for equitable estoppel is DISMISSED WITH PREJUDICE.

4. Defendant's counterclaim for inequitable conduct is DISMISSED WITH PREJUDICE with respect to Schneider and DISMISSED WITHOUT PREJUDICE with respect to ACS.

5. Defendant's counterclaim for laches and improper delay is DISMISSED WITH PREJUDICE.

6. The Court STRIKES WITH PREJUDICE defendant's affirmative defenses for failure to state a

Not Reported in F.Supp.                                                                      Page 12

Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648

**(Cite as: Not Reported in F.Supp.)**

claim, equitable estoppel and laches for delay in prosecution, and prosecution history estoppel.

7. The Court STRIKES WITHOUT PREJUDICE defendant's affirmative defenses for invalidity, inequitable conduct, and unclean hands and patent misuse.

Any amended answer must be filed by August 16, 1996.

IT IS SO ORDERED.

N.D.Cal.,1996.
Advanced Cardivascular Systems, Inc. v. Medtronic, Inc.;
Not Reported in F.Supp., 1996 WL 467293 (N.D.Cal.), 65 USLW 2176, 35 Fed.R.Serv.3d 318, 36 Fed.R.Serv.3d 648

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

41 U.S.P.Q.2d 1770                                                                                              Page 1

Not Reported in F.Supp., 1996 WL 467273 (N.D.Cal.), 41 U.S.P.Q.2d 1770
**(Cite as: 41 U.S.P.Q.2d 1770)**

Advanced Cardiovascular Systems Inc.
v.
Medtronic Inc.

U.S. District Court Northern District of California

No. C-96-0942 DLJ

Decided July 24, 1996
United States Patents Quarterly Headnotes

**PATENTS**
**[1] Infringement -- Tests (Section 120.09)**
**JUDICIAL PRACTICE AND PROCEDURE**
**Procedure -- Pleadings (Section 410.26)**
Patent infringement defendant's affirmative defense of
failure to state claim upon which relief can be granted
is stricken with prejudice, since plaintiff's allegations
in complaint must be taken as true and construed in
light most favorable to plaintiff for purposes of
evaluating sufficiency of pleadings, and since
plaintiff's allegations that it owns all rights, interests,
and legal title to patent in suit, and that defendant has
manufactured, used, offered for sale, sold, or
distributed percutaneous transluminal coronary
angioplasty catheters that infringe one or more claims
of patent, assert essential elements of patent
infringement.

**PATENTS**
**[2] Infringement -- Defenses -- In general (Section
120.1101)**
**JUDICIAL PRACTICE AND PROCEDURE**
**Procedure -- Pleadings (Section 410.26)**
Affirmative defense asserting that plaintiff's patent is
"invalid, void, and unenforceable for failure to satisfy
requirements of patentability contained in Title 35 of
United States Code, including but not limited to,
sections 101, 102, 103, and/or 112" is stricken with
leave to amend, since Fed.R.Civ.P. 8 requires that
affirmative defense must be pled with minimal
specificity necessary to give plaintiff fair notice of
defense, since Sections 101, 102, 103, and 112 provide
numerous grounds for finding patent invalid, and since
defendant must provide more specific statement of
basis for defense in order to give plaintiff fair notice of
claims being asserted.

**PATENTS**
**[3] Infringement -- Defenses -- Prosecution history
estoppel (Section 120.1105)**
**JUDICIAL PRACTICE AND PROCEDURE**
**Procedure -- Pleadings (Section 410.26)**
Portions of patent infringement defendant's answer
asserting prosecution history estoppel as defense are
stricken with prejudice, since prosecution history
estoppel is only applicable if doctrine of equivalents
has been raised as means of constructing infringement
claim, and thus is not affirmative defense; ruling does
not preclude defendant from raising prosecution
history estoppel should plaintiff assert infringement
claim based on doctrine of equivalents.

**PATENTS**
**[4] Infringement -- Defenses -- Estoppel; laches
(Section 120.1103)**
Patent infringement defendant's theory of laches based
on delay in prosecution of patent is not cognizable,
since delay between issuance of patent and filing of
infringement action is only delay that can form basis
of laches defense; there was no improper delay in
prosecution to justify finding of laches in any event,
since there is no allegation that plaintiff violated any
statutory or regulatory rules for prosecuting patents.

**PATENTS**
**[5] Infringement -- Defenses -- Fraud or unclean
hands (Section 120.1111)**
**JUDICIAL PRACTICE AND PROCEDURE**
**Procedure -- Pleadings (Section 410.26)**
Patent infringement defendant's allegation of
inequitable conduct, which is essentially claim of
fraud, does not satisfy requirements of Fed.R.Civ.P.
9(b), since general allegation identifying time of
inequitable conduct as "during the prosecution of the
'346 patent," place as "in the PTO proceedings," and
nature of alleged misconduct as "failure to disclose
pertinent material prior art of which [plaintiff] was
aware with the intent to mislead" does not provide
particulars of what plaintiff failed to disclose or
circumstances indicating plaintiff's intent to mislead
Patent and Trademark Office.

**PATENTS**
**[6] Patent misuse -- Improper procurement and
enforcement (Section 140.03)**
**JUDICIAL PRACTICE AND PROCEDURE**
**Procedure -- Pleadings (Section 410.26)**

COPR. © 2007 The Bureau of National Affairs, Inc.

Not Reported in F.Supp., 1996 WL 467273 (N.D.Cal.), 41 U.S.P.Q.2d 1770

**(Cite as: 41 U.S.P.Q.2d 1770)**

Accused infringer's defense of patent misuse is stricken with prejudice, since patent owner cannot be denied relief or found guilty of misuse simply by reason of seeking to enforce his or her patent, since crux of defense is that plaintiff knew its patent was invalid or unenforceable at time it filed infringement action, and since defendant has provided no factual basis for its claim.

**JUDICIAL PRACTICE AND PROCEDURE**
**[7] Procedure -- Counterclaims -- In general (Section 410.2101)**
References in counterclaim to affirmative defenses to patent infringement which have been stricken with prejudice will be stricken from counterclaim as well, since counterclaim cannot state claim based on affirmative defense that has been stricken.

**JUDICIAL PRACTICE AND PROCEDURE**
**Particular patents -- General and mechanical -- Medical devices**
5,496,346, Horzewski and Yock, reinforced balloon dilatation catheter with slitted exchange sleeve and method, infringement defendant's affirmative defenses and counterclaim stricken in part.

**\*1771** Action by Advanced Cardiovascular Systems Inc. against Medtronic Inc. for patent infringement, in which defendant counterclaims. On plaintiff's motions to strike affirmative defenses and to dismiss counterclaim. Motions granted in part.

Related case: 40 USPQ2d 1291 .

Timothy J. Malloy, Edward A. Mas II, and David D. Headrick, of McAndrews, Held & Malloy, Chicago, Ill.; Richard H. Abramson and Hope L. Hudson, of Heller, Ehrman, White & McAuliffe, Palo Alto, Calif., for plaintiff.

Lynn J. Grano, of Robins, Kaplan, Miller & Ciresi, San Francisco, Calif.; Michael V. Ciresi, of Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn.; Ernest I. Reveal III, of Robins, Kaplan, Miller & Ciresi, Costa Mesa, Calif., for defendant.

Jensen, J.

On July 10, 1996, the Court heard argument on plaintiff's motion to strike defendant's affirmative defenses and to dismiss the counterclaim. Timothy J. Malloy, David D. Headrick, and Edward A. Mas II of McAndrews, Held & Malloy and Hope L. Hudson of

Heller, Ehrman, White & McAuliffe appeared on behalf of plaintiff Advanced Cardiovascular Systems, Inc.; Michael V. Ciresi, Ernest I. Reveal III, and Lynn J. Grand of Robins, Kaplan, Miller & Ciresi appeared for defendant Medtronic, Inc. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby strikes without prejudice defendant's affirmative defenses for invalidity and inequitable conduct and strikes with prejudice defendant's affirmative defenses for failure to state a claim, prosecution history estoppel, laches and estoppel due to delay in prosecution, and patent misuse. Defendant's counterclaim is dismissed to the extent that it refers to those affirmative defenses stricken with prejudice.

I. BACKGROUND

A. *Factual Background and Procedural History*
Advanced Cardiovascular Systems, Inc. ("ACS") and Medtronic, Inc. ("Medtronic") are both companies engaged in developing, manufacturing, promoting, and selling interventional medical devices, including rapid exchange catheters used in percutaneous transluminal coronary angioplasty ("PTCA") for treating coronary artery **\*1772** disease. [FN1] These parties and others are currently involved in a complex series of patent infringement suits. The Court has ordered that all of the following cases be related pursuant to Civil Local Rule 3-12(e).

On October 10, 1995, ACS filed two similar patent infringement suits. The first, C-95-3577-DLJ, was brought against Medtronic for infringement of Patent Nos. 5,040,548, 5,061,273, and 5,451,233 ("the '548 patent," " "the '273 patent," and "the '233 patent,",", respectively). These patents relate to certain kinds of "rapid exchange" catheters that can be used for PTCA. The patents were issued to the inventor, Dr. Paul G. Yock, pursuant to continuation applications relating to an original patent application filed on April 15, 1986. The rights to these patents were subsequently licensed to ACS. ACS alleges that Medtronic's "Falcon" rapid exchange PTCA catheters infringe on one or more claims of the '548, '273, or '233 patents.

The second suit ACS filed on October 10, 1995, C-95-3580-DLJ, was brought against SciMed Systems, Inc. ("SciMed"), for infringement of the '548, '273, and '233 patents, as well as for infringement of U.S Patent No. 5,350,395 ("the '395 patent"), all of which were issued to Dr. Paul G. Yock between August 20,

Not Reported in F.Supp., 1996 WL 467273 (N.D.Cal.), 41 U.S.P.Q.2d 1770

**(Cite as: 41 U.S.P.Q.2d 1770)**

1990 and September 19, 1995. Plaintiff alleges that SciMed's "Express Plus" and "Express Plus II" rapid exchange PTCA catheters infringe on the named patents.

On March 12, 1996, ACS filed the present action, C-96-0942-DLJ, against Medtronic for infringement of U.S. Patent No. 5,496,346 ("the '346 patent"), claiming that Medtronic's "Falcon" rapid exchange catheter infringes one or more claims of the '346 patent. The '346 patent, entitled "Reinforced Balloon Dilatation Catheter With Slitted Exchange Sleeve and Method," was issued on March 5, 1996 in the names of the inventors, Michael J. Horzewski and Dr. Paul G. Yock. The '346 patent relates generally to rapid exchange balloon dilatation catheters which are used in PTCA for treating coronary artery disease.

On March 12, 1996, ACS also filed a suit, C-96-0950-DLJ, against SciMed for infringement of the '346 patent. ACS claims that SciMed's "Express Plus II" and "Leap Express Plus" catheters infringe one or more claims of the '346 patent.

B. *Legal Standard*

1. *Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether she is entitled to offer evidence in support of her claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

In answering this question, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow plaintiff to develop her case at this stage of the proceedings. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981).

If the Court chooses to dismiss the complaint, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1448

(9th Cir. 1987) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir. 1980) (per curiam)); *see Poling v. Morgan,* 829 F.2d 882, 886 (9th Cir. 1987) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)) (futility is basis for denying amendment under Rule 15).

2. *Motion to Strike*

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

3. *Rule 8*

Civil Rule 8(a) requires that a pleading contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the **\*1773** pleader seeks." "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense."*Wyshak v. City National Bank,* 607 F.2d 824, 827 (9th Cir. 1979).

4. *Rule 9(b)*

Civil Rule 9(b) requires that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

## II. ARGUMENTS

On May 8, 1996, plaintiff ACS filed a motion to strike the affirmative defenses and to dismiss the counterclaim alleged in Medtronic's April 4, 1996 Answer to this suit, C-96-0942-DLJ. Medtronic's Answer alleges the following affirmative defenses: (1) failure to state a claim; (2) noninfringement; (3) invalidity and unenforceability of the '346 patent; (4) prosecution history estoppel; (5) laches and estoppel arising from delays in prosecuting the ' 346 patent; (6) inequitable conduct; and (7) patent misuse. Plaintiff moves to strike all of these defenses except the noninfringement defense. In addition, plaintiff argues that Medtronic's counterclaim should be dismissed to the extent that it incorporates the insufficient affirmative defenses.

41 U.S.P.Q.2d 1770                                                                                    Page 4

Not Reported in F.Supp., 1996 WL 467273 (N.D.Cal.), 41 U.S.P.Q.2d 1770

**(Cite as: 41 U.S.P.Q.2d 1770)**

A. *Affirmative Defenses* 1. *Failure to State a Claim*

Plaintiff argues that this defense is insufficient, because plaintiff has adequately pled a claim of patent infringement, and because Medtronic's pleading does not satisfy Rule 8 of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 12(b) provides that the defense of failure to state a claim upon which relief can be granted may be "asserted in [a] responsive pleading" or "made by motion." If a court finds that the plaintiff has stated a valid claim, however, the court may strike the defense. *See Federal Savings and Loan Ins. Corp. v. Maio,* 736 F. Supp. 1039, 1042 (N.D. Cal. 1989).

[1] In order to state a claim of patent infringement, a plaintiff must alleged that the defendant makes, uses, offers to sell, or sells the patented invention within the United States, during the term of the patent, and without the authority of the patent holder. *See* 35 U.S.C. Section 271(a). Plaintiff here has pled that "ACS owns all rights, interests, and legal title to the ' 346 patent," Compl. at Para. 8, and that "Medtronic has manufactured, used, offered for sale, sold or distributed PTCA catheters . . . which infringe one or more claims of the '346 patent." Compl. at Para. 11. For purposes of evaluating the sufficiency of pleadings, all averments must be taken as true and construed in the light most favorable to the pleading party. *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924, 928 (9th Cir. 1994). Given that plaintiff has alleged the essential elements of patent infringement, the Court finds plaintiff's pleading sufficient and strikes this affirmative defense with prejudice.

2. *Invalidity and Unenforceability*

[2] Medtronic asserts as an affirmative defense that the '346 patent "is invalid, void, and unenforceable for failure to satisfy the requirements of patentability contained in Title 35 United States Code, including but not limited to, sections 101, 102, 103, and/or 112." Answer at Para. 16. Under Rule 8 of the Federal Rules of Civil Procedure, an affirmative defense must be pled with the minimal specificity necessary to give the plaintiff "fair notice" of the defense. *Wyshak,* 607 F.2d at 827. Since sections 101, 102, 103, and 112 provide numerous grounds for finding a patent invalid,

defendant must provide a more specific statement of the basis for this defense in order to give ACS fair notice of the claims being asserted. Accordingly, the Court hereby strikes this affirmative defense without prejudice and grants leave to amend. [FN2]

3. *Prosecution History Estoppel*

Both parties agree that Paragraphs 17 and 18 of Medtronic's Answer assert the defense of prosecution history estoppel. [FN3] According **\*1774** to Medtronic, "ACS is stopped from ignoring the representations it made and positions it took before the PTO [Patent & Trademark Office] in order to secure issuance of the '346 patent." Def's Opp. at 7:13-15. Plaintiff argues that these allegations should be stricken as a matter of law, because prosecution history estoppel is not a recognized defense to a claim for patent infringement.

[3] Prosecution history estoppel is a defense to the assertion of the doctrine of equivalents. The doctrine of equivalents provides that an accused product which does not literally infringe the claims of a patent may infringe the patent nonetheless, if the differences between the accused product and the claimed invention are so insubstantial that the accused product falls within the patent's "range of equivalence."*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.,* 62 F.3d 1512, 1516-22 [ 35 USPQ2d 1641 ] (Fed. Cir. 1995) (en banc), *cert. granted,* 116 S.Ct. 1014 (1996). "The essence of prosecution history estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents, coverage of subject matter that was relinquished during prosecution to procure issuance of the patent."*Hoganas AB v. Dresser Indus., Inc.,* 9 F.3d 948, 951-52 [ 28 USPQ2d 1936 ] (Fed. Cir. 1993). Since prosecution history estoppel is only applicable where the doctrine of equivalents has been raised as a means of constructing an infringement claim, prosecution history estoppel is not an affirmative defense. [FN4] Accordingly, the Court strikes with prejudice Paragraphs 17 and 18 from Medtronic's Answer. This ruling, however, does not preclude defendant from raising prosecution history estoppel should plaintiff assert a patent infringement claim based on the doctrine of equivalents.

4. *Laches and Estoppel from Delay in Prosecution*

41 U.S.P.Q.2d 1770                                                                 Page 5

Not Reported in F.Supp., 1996 WL 467273 (N.D.Cal.), 41 U.S.P.Q.2d 1770

**(Cite as: 41 U.S.P.Q.2d 1770)**

Paragraph 19 of Medtronic's Answer pleads the following affirmative defense:

[The '346 patent] is invalid, unenforceable and/or void under the doctrines of estoppel and laches, and due to the unreasonable, improper and undue delay in the prosecution of this patent. In summary, the conception of the alleged invention claimed in the '346 patent occurred sometime prior to January 1987, yet the claims that appear in the '346 patent were not first asserted until well after that date.

According to plaintiff, this pleading fails to satisfy the fair notice requirement of Rule 8, does not allege the elements of laches or estoppel, and does not allege a cognizable defense to a claim of patent infringement.

[4] To invoke a defense of laches, a defendant must allege "neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar."*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028-29 [ 22 USPQ2d 1321 ] (Fed. Cir. 1992) (en banc). In the context of patent litigation, " [t]he period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of the suit."*Id.* at 1032. The Federal Circuit has explicitly stated that the "period [of delay] does not begin prior to issuance of the patent."*Id.*; *see also Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1576 [ 31 USPQ2d 1290 ] (Fed. Cir. 1994) (" [T]he laches period does not accrue until [the] patent issues . . ."). Since the only delay that can form the basis of a laches defense is delay between the issuance of the patent and the filing of the infringement action, defendant's theory of laches based on delay in prosecution of the patent is not cognizable.

Furthermore, since there is no allegation that plaintiff violated any of the statutory or regulatory rules for prosecuting patents, there was no improper delay in the prosecution of this patent to justify a laches or equitable estoppel defense. [FN5] The '346 patent issued from a series of "continuation" **1775** applications relating back to the original application filed on January 6, 1987. Under 35 U.S.C. Section 120, the prosecution of this patent dates back to the filing of the original application. *Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 [ 32 USPQ2d 1077 ] (Fed. Cir. 1994). By providing this

relation back doctrine, Congress evidenced a clear intent to regulate the timing of continuation applications. Accordingly, only Congress can determine what constitutes unreasonable delay in the filing of such an application. It is not for this Court to decide that the prosecution of a patent according to the rules of the PTO is unreasonable and inequitable. Since defendant's laches and equitable estoppel defenses ask the Court to make precisely this determination, the Court strikes these defenses with prejudice.

*5. Inequitable Conduct*

The doctrine of inequitable conduct renders a patent unenforceable and thereby provides a defense to a patent infringement suit, if the patent applicant acted inequitably before the PTO in prosecuting the patent. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 [ 9 USPQ2d 1384 ] (Fed. Cir. 1988), *cert. denied*, 490 U.S. 1067 (1989). Inequitable conduct includes fraud, deception, or failure to disclose material information. *Id.*

Under Rule 9(b), fraud defenses must be pled with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) is designed to give an opposing party notice of particular misconduct. *Semegen v. Weidner*, 780 F.2d 727, 731-35 (9th Cir. 1985). This court has previously held that Rule 9(b) should be applied to pleadings of inequitable conduct as well. *See Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219, 220 [ 31 USPQ2d 1848 ] (N.D. Cal. 1994). According to the court's reasoning, "a plain reading of the Federal Rules, the weight of authority, and sound public policy all require that pleadings which allege inequitable conduct before the PTO comply with Rule 9(b)."*Id.* Paragraph 20 of Medtronic's Answer alleges:

Upon information and belief, United States Patent No. 5,496,346 is unenforceable because of the inequitable conduct in the prosecution of such patent, and specifically, the failure to disclose pertinent, material prior art of which applicants or person(s) acting on behalf of the applicants were aware with the intent to mislead the United States Patent and Trademark Office in its examination of the validity of the patent.

Since this allegation is essentially a fraud claim, defendant must plead this claim with the particularity required under Rule 9(b). Accordingly, defendant is required to "state the time, place, and specific content of the false representations as well as the identities of

Not Reported in F.Supp., 1996 WL 467273 (N.D.Cal.), 41 U.S.P.Q.2d 1770

**(Cite as: 41 U.S.P.Q.2d 1770)**

the parties to the misrepresentation."*Schreiber Distributing v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)*.

[5] Medtronic claims that it has met these requirements by identifying the time of the inequitable conduct as "during the prosecution of the '346 patent," the place as "in the PTO proceedings," and the nature of the alleged misconduct as "failure to disclose pertinent material prior art of which [ACS] was aware with the intent to mislead." Def's Opp. at 17:6-9. The Court does not find that Medtronic's general allegations satisfy the requirements of Rule 9(b). Most significantly, defendant has not provided the particulars of what ACS failed to disclose and the circumstances indicating ACS' intent to mislead the PTO. Therefore, the Court hereby strikes this defense without prejudice and grants leave to amend.

6. *Patent Misuse*

[6] Defendant's patent misuse defense alleges that despite the fact that ACS "knows that [the '346 patent] is invalid and/or unenforceable, . . . [ACS] nonetheless misuses such patent by willfully, deliberately, and intentionally asserting it against Medtronic in this action." Answer at Para. 21. Under 35 U.S.C. Section 271(d), a patent owner cannot be denied relief or found guilty of misuse simply by reason of seeking to enforce his or her patent. Therefore, the crux of this defense is that ACS knew the patent was invalid or unenforceable at the time it filed this action. Since defendant has provided no factual basis for this pleading and has not opposed plaintiff's motion to strike the defense, the Court hereby strikes defendant's patent misuse defense with prejudice.

B. *Counterclaim*

[7] Plaintiff argues that Medtronic's counterclaim should be dismissed pursuant to Rule 12(b)(6) to the extent that it incorporates insufficient affirmative defenses. As defendant concedes, if any affirmative defense is stricken, then the counterclaim cannot state a claim based on that defense. Therefore, in order to keep the law of this case clear, the Court hereby strikes from the **\*1776** counterclaim all references to defendant's affirmative defenses for failure to state a claim, prosecution history estoppel, laches and estoppel from delay in prosecution, and patent misuse.

III. CONCLUSION

The Court hereby STRIKES WITH PREJUDICE defendant's affirmative defenses for failure to state a claim, prosecution history estoppel, laches and estoppel from delay in prosecution, and patent misuse. The Court STRIKES WITHOUT PREJUDICE defendant's affirmative defenses for invalidity and inequitable conduct. In addition, the Court STRIKES from the counterclaim all references to those affirmative defenses that have been stricken with prejudice. Any amended answer must be filed by August 16, 1996. [FN6]

IT IS SO ORDERED.

FN1 During a PTCA procedure, a balloon dilatation catheter is carried through the patient's vasculature over a guidewire to a point where deposits, or "lesions," in the coronary arteries have blocked or narrowed the arteries thereby restricting blood flow. Once the catheter is in place, the balloon is inflated to compress or break the material forming the lesion in order to open the restricted artery to improve blood flow.

FN2 Defendant should note the Court's ruling on this issue in response to an identical motion brought by ACS in *Advanced Cardiovascular Systems, Inc. v. SciMed Systems, Inc.,* C-96-950-DLJ [ 40 USPQ2d 1291 ]. The Court has approved a proposed amended answer submitted by SciMed in response to ACS' motion to strike. The factual specificity of SciMed's amended invalidity defense would be sufficient in this case as well.

FN3 Paragraph 17 of the Answer alleges:

ACS is precluded or estopped from claiming an interpretation or scope of any valid claim of United States Patent No. 5,496,346 so as to bring within the scope of that claim any balloon dilatation catheter manufactured and/or sold by Medtronic, in light of the relevant prior art.

Paragraph 18 of the Answer alleges:

The balloon dilatation catheters manufactured and/or sold by Medtronic do not infringe upon any valid claims of United States Patent No. 5,496,346

COPR. © 2007 The Bureau of National Affairs, Inc.

41 U.S.P.Q.2d 1770                                                                                          Page 7

Not Reported in F.Supp., 1996 WL 467273 (N.D.Cal.), 41 U.S.P.Q.2d 1770

**(Cite as: 41 U.S.P.Q.2d 1770)**

when those claims are properly construed in light of the relevant prior art and certain admissions, representations, and/or statements made by or on behalf of applicants in connection with prosecution of the applications resulting in the '346 patent.

> FN4 In *Carman Industries, Inc. v. Wahl,* 724 F.2d 932, 942 [ 220 USPQ 481 ] (Fed. Cir. 1983), the court made an off-hand reference to prosecution history estoppel as an affirmative defense. However, the remark was made in the context of finding that a party cannot raise the defense of prosecution history estoppel for the first time on appeal. Therefore, this case does not specifically authorize pleading prosecution history estoppel as an affirmative defense.

> FN5 To invoke a defense of equitable estoppel, a defendant must allege three essential elements: (1) the plaintiff, who usually must have had knowledge of the true facts, communicated something in a misleading way, either by words, conduct or silence; (2) the defendant relied upon that communication; and (3) the defendant would be harmed materially if the plaintiff is permitted to assert any claim inconsistent with his earlier conduct. *Aukerman,* 960 F.2d at 1041.

> FN6 The Court notes that both parties have violated Civil Local Rule 3- 4(c)(2), which requires that the written text of all papers presented to the Court for filing, including footnotes and quotations, be no less than pica size typewriting. In addition, all papers must be double-spaced and contain no more than 28 lines per page. Any violation of these rules is grounds for sanctions. *See* Civil Local Rule 1-4.

N.D.Cal.

41 U.S.P.Q.2d 1770

END OF DOCUMENT

COPR. © 2007 The Bureau of National Affairs, Inc.

Westlaw.

H

Grid Systems Corp. v. Texas Instruments Inc.
N.D.Cal.,1991.

United States District Court,N.D. California.
GRID SYSTEMS CORPORATION, and Tandy
Corporation, Plaintiffs,
v.
TEXAS INSTRUMENTS INCORPORATED, et al.,
Defendants.
**No. C-90-2571-DLJ.**

May 14, 1991.
As corrected June 4, 1991.

Patent licensees brought action against licensor and computer component manufacturers alleging violation of antitrust law, invalidity of patents, and breach of contract. The District Court, Jensen, J., held that: (1) patent licensee stated cause of action for antitrust violations; (2) patent licensee failed to state cause of action for patent invalidity; and (3) district court declined to exercise pendent jurisdiction over state claim.

Motion to dismiss granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure 170A** 🔑1837.1

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
        170AXI(B)5 Proceedings
            170Ak1837 Effect
                170Ak1837.1 k. In General. Most Cited Cases
                (Formerly 170Ak1837)
District court will dismiss complaint or any claim in it without leave to amend only if it is absolutely clear that deficiencies of complaint could not be cured by amendment.

**[2] Federal Civil Procedure 170A** 🔑1771

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
        170AXI(B)3 Pleading, Defects In, in General
            170Ak1771 k. In General. Most Cited Cases

While conclusory allegations unsupported by any specific facts are not sufficient under pleading rule, plaintiffs are not required to plead all their evidence in order to avoid dismissal for failure to state a claim; claim will be sufficiently pled where it provides fair notice of nature of claim and facts which underlie claim. Fed.Rules Civ.Proc.Rules 8, 8(a), (a)(2), 12, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A** 🔑630

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak630 k. Sufficiency in General. Most Cited Cases
Effective notice pleading should provide defendant with basis for assessing initial strength of plaintiff's claim, for preserving relevant evidence, for identifying any related counterclaims or cross claims, and for preparing appropriate answer. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[4] Antitrust and Trade Regulation 29T** 🔑972(3)

29T Antitrust and Trade Regulation
    29TXVII Antitrust Actions, Proceedings, and Enforcement
        29TXVII(B) Actions
        29Tk972 Pleading
            29Tk972(2) Complaint
                29Tk972(3) k. In General. Most Cited Cases
                (Formerly 265k28(6.3))
Patent licensee cured defect in pleading in Sherman Act action which resulted from failure to allege facts which could give rise to inference of anticompetitive effects under per se rule when licensee amended complaint to define tied product as licenses for personal computer implementation technology and alleged existence of market for personal computer implementation technology licenses in which patent licensor was competing. Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

**[5] Antitrust and Trade Regulation 29T** 🔑976

29T Antitrust and Trade Regulation
    29TXVII Antitrust Actions, Proceedings, and Enforcement

771 F.Supp. 1033                                                Page 2
771 F.Supp. 1033, 1991-1 Trade Cases P 69,446, 20 U.S.P.Q.2d 1207
**(Cite as: 771 F.Supp. 1033)**

29TXVII(B) Actions
29Tk973 Evidence
29Tk976 k. Presumptions and Burden of
Proof. Most Cited Cases
(Formerly 265k28(7.1))
Inference of anticompetitive effect can arise in patent
and copyright cases under per se antitrust rule.
Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

**[6] Antitrust and Trade Regulation 29T**
**972(3)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and
Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(3) k. In General. Most Cited
Cases
(Formerly 265k28(6.3))
To allege, through fraud in the acquisition of patent,
violation of Sherman Act monopoly section, plaintiff
must allege knowing and willful fraud and that but
for fraud, affected patent would not have issued and
alleged all remaining elements necessary to establish
monopoly violation. Sherman Anti-Trust Act, § 2,
15 U.S.C.A. § 2.

**[7] Antitrust and Trade Regulation 29T**
**972(3)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and
Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(3) k. In General. Most Cited
Cases
(Formerly 265k28(6.3))

**Patents 291 97**

291 Patents
291IV Applications and Proceedings Thereon
291k97 k. Patent Office and Proceedings
Therein in General. Most Cited Cases
Patent licensee stated cause of action against licensor
for unlawful monopoly based on fraud in acquisition
of patent; licensee alleged that licensor concealed
prior art and that as a result of alleged fraud, patents
in question were issued by Patent Office and that as a
result of fraudulent acquisition of patents, licensor

monopolized, combined with others to monopolize,
and attempted to monopolize personal computer
architecture technology market. Sherman Anti-Trust
Act, § 2, 15 U.S.C.A. § 2.

**[8] Antitrust and Trade Regulation 29T 958**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and
Enforcement
29TXVII(B) Actions
29Tk958 k. In General. Most Cited Cases
(Formerly 265k28(1.3))
Patent licensee stated cause of action against licensor
for unlawful monopoly based on bad-faith
enforcement of patents covering personal computer
components by alleging that licensor had actual
knowledge that patents were invalid, that licensor
attempted to enforce patents with intent to
monopolize, and that licensor had succeeded in
gaining monopoly power or dangerous probability of
success existed. Sherman Anti-Trust Act, § 2, 15
U.S.C.A. § 2.

**[9] Patents 291 310.7(5)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k309 Pleading
291k310.7 Plea and Answer
291k310.7(5) k. Counterclaim in
Answer. Most Cited Cases
(Formerly 291k310(71/2))
Allegations that patents for personal computer
components were invalid for one or more listed
reasons, without making an effort to link patents with
defects, was insufficient to state a claim for invalidity
of patents. Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.

**[10] Patents 291 310.7(5)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k309 Pleading
291k310.7 Plea and Answer
291k310.7(5) k. Counterclaim in
Answer. Most Cited Cases
(Formerly 291k310(71/2))
Complaint alleging that nine patents for personal
computer components were invalid because of
patentholder's failure to comply with requirements of
enumerated statutes was insufficient to state a claim.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

771 F.Supp. 1033                                                              Page 3
771 F.Supp. 1033, 1991-1 Trade Cases  P 69,446, 20 U.S.P.Q.2d 1207
**(Cite as: 771 F.Supp. 1033)**

Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.

**[11] Declaratory Judgment 118A ⌖232**

118A Declaratory Judgment
   118AII Subjects of Declaratory Relief
     118AII(L) Patents
      118Ak231 Patents
       118Ak232 k. Validity of Patents. Most Cited Cases
Existence of valid license agreement is not a bar to declaratory relief action brought by licensee challenging validity of patents held by licensor; thus, where totality of circumstances demonstrates sufficient apprehension of pendency of dispute to guarantee sharp presentation of issues essential to proper functioning of adversary proceedings, licensee may bring declaratory relief action for patent invalidity against licensor despite existence of valid license agreement.

**[12] Federal Courts 170B ⌖14.1**

170B Federal Courts
   170BI Jurisdiction and Powers in General
     170BI(A) In General
      170Bk14 Jurisdiction of Entire Controversy; Pendent Jurisdiction
       170Bk14.1 k. In General. Most Cited Cases
       (Formerly 170Bk14)
District court may exercise pendent jurisdiction over claim arising under state law when complaint asserts valid claim arising under federal law;  complaint asserts claim arising under state law which shares common nucleus of operative facts with federal claim;  and state law claim is such that plaintiff would ordinarily be expected to try them all in a single judicial proceeding.

**[13] Federal Courts 170B ⌖14.1**

170B Federal Courts
   170BI Jurisdiction and Powers in General
     170BI(A) In General
      170Bk14 Jurisdiction of Entire Controversy; Pendent Jurisdiction
       170Bk14.1 k. In General. Most Cited Cases
       (Formerly 170Bk14)
District court's exercise of pendent jurisdiction is discretionary, and court may decline to exercise the jurisdiction in interest of economy, convenience, and fairness to parties.

**[14] Federal Courts 170B ⌖15**

170B Federal Courts
   170BI Jurisdiction and Powers in General
     170BI(A) In General
      170Bk14 Jurisdiction of Entire Controversy; Pendent Jurisdiction
       170Bk15 k. Federal Question Cases in General, Claims Pendent To. Most Cited Cases
District court declined to exercise pendent jurisdiction over state law breach of contract claim where claim shared no common nucleus of operative facts with federal claim which arose primarily from allegations of fraud in acquisition of patents by defendant.

**\*1035** Roger L. Cook, of Townsend and Townsend, and James G. Gilliland of Khourie, Crew & Jaeger, P.C., San Francisco, Cal., for plaintiffs.

Robert H. Rawson, of Jones, Day, Reavis & Pogue, Dallas, Tex., for defendant Texas Instruments Corp.

Mark E. Miller, of Fliesler, Dubb, Meyer & Lovejoy, San Francisco, Cal., for defendant Adaptec, Inc.

ORDER

JENSEN, District Judge.
This motion to dismiss came on for hearing before this Court on May 1, 1991.   For the reasons discussed below, Texas Instruments Incorporated's motion for dismissal is GRANTED IN PART AND DENIED IN PART.

I. BACKGROUND.

The present motion to dismiss arises in the context of a dispute over the validity of licenses and patents covering certain electronic components commonly used in the manufacture of personal computers.   This is the second motion to dismiss brought by defendant Texas Instruments Incorporated ("TI").   The first was resolved by Court's prior of December 28, 1990, (the "December 28 Order").   TI's second motion revisits the issues addressed in the December 28 Order in the context of a new complaint amended specifically to respond to the deficiencies identified in the December 28 Order.   The facts are as follows.

Plaintiff Tandy Corporation ("Tandy") is a large producer and retailer of personal computers. Plaintiff GRiD Systems Corporation ("Grid"), which is a wholly owned subsidiary of Tandy, manufactures microprocessor-based products, including lap-top

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

771 F.Supp. 1033                                                                    Page 4
771 F.Supp. 1033, 1991-1 Trade Cases  P 69,446, 20 U.S.P.Q.2d 1207
**(Cite as: 771 F.Supp. 1033)**

computers, which are retailed by Tandy.[FN1] Defendants Adaptec, Inc. ("Adaptec"), Street Electronics Corporation ("Street"), and Best Data Products, Inc. ("Best"), manufacture various computer components which are purchased by Tandy and Grid for **1036** direct resale or use computers manufactured by Tandy and Grid. Defendant TI is a Texas based electronics firm which holds a substantial number of patents covering inventions and processes commonly used in the manufacture of personal and lap-top computers.

> FN1. Unless otherwise specified, all further references to Tandy refer collectively to plaintiffs Tandy and Grid.

In a letter dated February 17, 1989, and in subsequent discussions, TI asserted that certain Tandy personal computer products infringe TI patents. *See* December 28 Order, at 2 (listing products and patents). After asserting infringement, TI allegedly demanded that Tandy and Grid enter into a license agreement with TI or face litigation. Negotiations ensued and representatives of TI, Tandy and Grid entered a license agreement (the "License Agreement"). The License Agreement covers the allegedly infringing Tandy and Grid products, and grants TI rights under various patents owned by Tandy.

Tandy and Grid now claim that TI's assertion of infringement and alleged imposition of the License Agreement was improper. As a result Tandy has brought the present action against TI and attacked the validity of TI's patents and the License Agreement.

In its first two claims, Tandy alleges that TI has violated sections 1 and 2 of the Sherman Act. 15 U.S.C. § § 1 & 2. In its third and fourth claims Tandy requests a judicial declaration that either (1) certain TI patents are invalid, (2) Tandy products do not infringe these patents, or (3) Tandy has an implied license to use these products by acquiring them from other licensees, and this implied license "abates" Tandy's express License Agreement with TI. Finally, in its fifth and sixth claims Tandy asks for a judicial declaration that defendants Adaptec, Street, and Best, must indemnify Tandy under their contracts with Tandy for any royalty payments Tandy must make under its License Agreement with TI.

In the prior motion to dismiss defendants TI and Best moved to dismiss Tandy's first four claims against TI, and urged to the Court to decline pendent jurisdiction over Tandy's fifth and sixth claims against Adaptec, Street, and Best. In the lengthy December 28 Order, the Court granted TI and Best's motion with leave to amend.

On January 30, 1991, Tandy filed its second amended complaint which attempts to cure the defects identified in the December 28 Order. TI now presents a new motion to dismiss which raises two issues. First, TI argues that the second amended complaint fails to live up to the terms of December 28 Order and should be dismissed with prejudice. Second, TI urges the Court to reconsider certain aspects of the analysis set out in the December 28 Order, and to either amend this analysis (resulting in the dismissal of parts of the new complaint) or to certify portions of the December 28 Order for immediate appeal.

Defendant Best has joined TI's present motion to dismiss. Defendant Adaptec joins Tandy's opposition to TI's motion, but only with respect TI's motion to dismiss Tandy's fourth claim for relief.

## II. THE APPLICABLE LEGAL STANDARD.

The standards governing a motion to dismiss were set out in the December 28 motion. For clarity, this discussion is repeated here.

[1] The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of his or her claim. "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In the Ninth Circuit, the Court making this determination must assume that the plaintiff's allegations are true, construe the complaint in a light most favorable to the plaintiff, and resolve every doubt in the plaintiff's favor. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). Therefore, the Court will dismiss the complaint or any claim in it without leave to amend only if "it is 'absolutely clear that the deficiencies **1037** of the complaint could not be cured by amendment.' " *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir.1980) (per curiam).

[2][3] The level of specificity required in pleading a

cause of action is regulated by Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2).  While conclusory allegations unsupported by any specific facts are not sufficient, McCarthy v. Mayo, 827 F.2d 1310, 1316 (9th Cir.1987), plaintiffs are not required to plead all their evidence in order to avoid dismissal under Rule 12.  Under Rule 8, a claim will be sufficiently plead where it provides fair notice of the nature of claim and the facts which underlie the claim.  In re Genentech, Inc. Securities Litigation, Fed.Sec.L.Rep. (CCH) ¶ 94,960, 1989 WL 201577 (N.D.Cal.1989); Wright & Miller, Federal Prac. & Proc.: Civil § 1215, pp. 109-110 (1969 ed.).  Effective notice pleading should provide the defendant with a basis for assessing the initial strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related counter- or cross-claims, and for preparing an appropriate answer.

### III. ANALYSIS.

A. *Tandy's First Claim Based On The Violation Of Section 1 Of The Sherman Act.*

Tandy's first claim asserts a cause of action under section 1 of the Sherman Act, which bars contracts, combinations, or conspiracies in restraint of trade or commerce.  15 U.S.C. § 1 (hereinafter "Section 1").  TI now attacks this claim on two grounds:  (1) Tandy has failed to live up to the requirements of the December 28 Order;  and (2) TI repeats its prior argument that the per se rule cannot apply to patent license tying because it is never reasonable to infer that patent license tying has an anticompetitive effect.[FN2]  The December 28 Order offers a broad based discussion of the per se rule as it has been augmented by recent authority, and this discussion is incorporated by reference here.    With this background, we move directly to TI's arguments.

> FN2.  In a third argument, TI suggests that recent amendments to statutory provisions regulating the defense of patent misuse in infringement suits have eliminated the per se rule in Section 1 anti-trust actions.  See,35 U.S.C. § 271(d)(5) (hereinafter, "section 271").  This argument is without merit.
> On its face, Section 271(d) relates only to the defense of patent misuse as a defense to an infringement claim.  TI argues that the

legislative history merits a judicial extension of this statute into the area of anti-trust.  Some legislators did favor such an exception.  However, a full reading of the legislative record reveals that Congress rejected the extension despite this articulate support.  Drake, *Patent Law: The Impact of the 1988 Patent Misuse Reform Act and Noerr-Pennington Doctrine on Misuse Defenses and Antitrust Counterclaims,* 38 Drake L.Rev. 175 (1989).  This history is adequately summarized by Mr. Calkins.  "The primary thrust of the first part of Senate Bill 438 [which later became section 271] went beyond patent infringement actions and would have applied generally to all tie-in antitrust violations where the tying product was a patent or copyright.... Certain conclusions can be reach concerning Congress' rejection of Senate Bill 438.  *First, the per se rule for Sherman Act tie-in cases (as enunciated in Loew's and Jefferson Parish) remains intact, and the presumption of economic power, when the tying product is a patent or copyright, survives.*"  *Id.,* (emphasis added).

1. Tandy's Allegations Meet The Requirements Of The December 28 Order.

[4]  In the December 28 Order, the Court concluded that Tandy's first claim for relief should be dismissed because, even when liberally construed, Tandy had failed to allege facts which could give rise to an inference of anticompetitive effects under the per se rule.   In particular, the Court found that Tandy had not alleged a competitive market for the tied products.  As a result, it was impossible to conceive of any set of facts where there could be anticompetitive effects in the market for the tied product.

Tandy argues that it has cured this defect through two amendments.    First, Tandy now defines the tied product as TI licenses for "PC Implementation Technology."    Second, Tandy alleges the existence of a market for "PC Implementation Technology"**1038** licenses in which TI competes with other licensors.[FN3]  ¶ 20.[FN4]

> FN3.  This market is further defined as the market "for licenses to patents that claim technology covering the implementation of particular models of PCs, PC components,

PC processes, peripheral devices and graphics display systems." Second Amended Complaint, at ¶ 20.

FN4. Unless otherwise specified, all further paragraph references are to the second amended complaint.

Tandy's argument is persuasive.   These allegations cure the defects identified in the December 28 Order.

2. It Is Reasonable To Infer That Anticompetitive Effects May Result From Patent License Tying.

[5] Reiterating an argument asserted in support of its prior motion to dismiss, TI argues that it is never reasonable to infer that patent license tying has an anticompetitive effect.   Thus, TI continues, "it is 'absolutely clear that the deficiencies [in Tandy's attempt to invoke the per se rule] could not be cured by amendment,' " and dismissal with prejudice is appropriate.   *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir.1980) (per curiam).

To oversimplify a bit, TI argues that charging a high price for two tied patent licenses has no more anticompetitive effect than charging the same high price for the one tying license.   Since it is established that TI may charge as high a price as the market will bear for any single patent, *Brulotte v. Thys Co.,* 379 U.S. 29, 33, 85 S.Ct. 176, 179, 13 L.Ed.2d 99 (1964), the Court should find here that charging the same high price for more than one patent cannot, standing alone, give rise to an inference of anticompetitive effects.

This argument is without merit.   Two flaws merit particular attention.

First, as was mentioned in footnote 2 above, Congress has extensively considered and rejected the notion that an inference of anticompetitive effect cannot arise in patent and copyright cases under the per se rule.   *See, supra* at 2 (discussing 35 U.S.C. § 271(d)(5)).   This Court should not step in where Congress has refused to tread.

Second, as a practical matter it is possible to imagine anticompetitive effects that might result from patent tying.   Tandy has alleged that it is a consumer in the competitive market for PC Implementation Technology licenses.   Tandy has further alleged that

under a tying arrangement, TI has forced Tandy to purchase licenses that it would not have purchased from TI under normal competitive market conditions. Tandy remains free to buy additional licenses from, say, IBM, as it would under normal competitive conditions.   However, having purchased one set of licenses from TI, Tandy may rationally decide that it is not economically desirable, or economically possible, to spend substantially money for substantially similar licenses from a competitor.   As a consequence, IBM is denied a sale in a non-competitive fashion, and Tandy, in addition to receiving a high price, has achieved market power and a market position over IBM through non-competitive means.[FN5]

FN5. Other anticompetitive effects also can be imagined.   Justice White identified some of the anti-competitive effects associated with tying in *Fortner Enterprises v. United States Steel Corp.,* 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969)(*Fortner I* ): "The tying seller may be working toward a monopoly position in the tied product and, even if he is not, the practice of tying forecloses other sellers of the tied product and makes it more difficult for new firms to enter that market....   In addition to these anticompetitive effects in the tied product, tying arrangements may be used to evade price control in the tying product through clandestine transfer of profit to the tied profit;   they may be used as a counting device to effect price discrimination;   and they may be used to force a full line of products on the customer so as to extract more easily from him a monopoly return on one unique product in the line."   *Id.* at 512-514, 89 S.Ct. at 1263-64   (J. White dissenting) (citations and notes omitted).

This hypothetical set of facts may well fail to appear in the evidence.   Nonetheless, at the dismissal stage, it prevents the Court from using Rule 15 to bar the application of the per se rule, even if anticompetitive effects do not occur in the usual case.

**\*1039** 3. Conclusion.

For the reasons offered above neither of TI's arguments provide a persuasive basis for dismissing Tandy's first claim for relief, and TI's motion for dismissal will be denied.

771 F.Supp. 1033                                                                                          Page 7
771 F.Supp. 1033, 1991-1 Trade Cases P 69,446, 20 U.S.P.Q.2d 1207
**(Cite as: 771 F.Supp. 1033)**

B. *Tandy's Second Claim Based On Section 2 Of The Sherman Act.*

Under § 2 of the Sherman Act, it is unlawful for any person to "monopolize, or attempt to monopolize, or combine to monopolize any part of trade or commerce." 15 U.S.C. § 2 ("Section 2"). As the Court noted in the December 28 Order, not all monopolies or attempts to form monopolies are illegal, and a monopoly which arises from the enforcement of a valid patent is a well-established example of legitimate monopoly power. *See Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 834, 70 S.Ct. 894, 898, 94 L.Ed. 1312 (1950); SCM Corp. v. Xerox Corp., 645 F.2d 1195, 1206 (2d Cir.1981)cert. denied,455 U.S. 1016, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982).* However, misuse of patent rights may amount to the sort of "willful" or "predatory" misconduct that would render a monopoly or attempted monopoly illegal under Section 2. *United States v. Grinnell Corp., 384 U.S. 563, 570-71, 86 S.Ct. 1698, 1703-04, 16 L.Ed.2d 778 (1966)* ("willful"); *Twin City Sportservice, Inc. v. Charles O. Finely & Co., 676 F.2d 1291, 1308-09 (9th Cir.1982)cert. den.459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982)* ("predatory").

For example, the Supreme Court has stated that "the maintenance and enforcement of a patent obtained by fraud on the Patent Office may be the basis of an action under § 2 of the Sherman Act." *Walker Process Equip., Inc. v. Food Machinery & Chem. Corp., 382 U.S. 172, 174, 86 S.Ct. 347, 349, 15 L.Ed.2d 247 (1965).* The Ninth Circuit has held that maintaining monopoly power by prosecuting patent infringement actions in bad faith may give rise to a violation of Section 2. *Handgards, Inc. v. Ethicon, Inc., 743 F.2d 1282, 1288, 1292-93 (9th Cir.1984).* Finally, a scheme involving the tying of patent licenses can establish the "willful" and "predatory" misconduct necessary for a violation of Section 2. *See Greyhound Computer Corp. v. International Business Machines Corp., 559 F.2d 488, 503-04 (9th Cir.1977)cert. denied,434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978); SmithKline Corp. v. Eli Lilly & Co., 575 F.2d 1056, 1065 (3rd Cir.1978)cert. denied,439 U.S. 838, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978).*

In its second claim, Tandy has attempted to allege a violation of Section 2 by alleging all three kinds of misconduct just identified. TI moves to dismiss the second claim arguing that Tandy has not sufficiently alleged any relevant form of misconduct.

As an initial matter, the Court has already found that Tandy has sufficiently alleged illegal tying. Thus, Tandy's second claim will not be dismissed, and we are left only with the question of whether Tandy's allegations regarding fraud in the procurement and bad faith enforcement should be stricken from the complaint.

1. Fraud In The Acquisition Of Asserted Patents.

[6] To allege a violation of Section 2 through fraud in the acquisition of a patent, Tandy must allege:
(1) "Knowing and willful fraud," *Walker Process Equip. v. Food Mach. & Chem. Corp., 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965); Kingsdown Medical Consultants v. Hollister, Inc., 863 F.2d 867, 876 (Fed.Cir.1988)* (in the context of inequitable conduct attack on validity rejecting gross negligence and holding that the evidence of intent "must indicate sufficient culpability to require a finding of intent to deceive.")
(2) but for the fraud the affected patents would not have issued, *Brunswick Corp. v. Riegel Textile Corp., 752 F.2d 261, 265 (7th Cir.1984); Jack Winter, Inc. v. Koratron Company, Inc., 375 F.Supp. 1, 67 (N.D.Cal.1974)* (explaining in the context of an alleged *Walker Process* violation, "if one were entitled to a patent under the legal tests of patentability, there **\*1040** is no illegal monopoly resulting from the [fraudulent] statements on which to base an anti-trust action." quoting *Corning Glass Works v. Anchor Hocking Glass Corp., 253 F.Supp. 461, 469 (D.Del.1966)*);
(3) "all the remaining elements necessary to establish a § 2 violation." *Ie.,* that by its fraudulent acquisition of patents, TI "monopolize[d], or attempt[ed] to monopolize, or combine[d] to monopolize any part of trade or commerce." 15 U.S.C. § 2; *Cataphote Corp. v. DeSoto Chem. Coatings, Inc., 450 F.2d 769, 778 (9th Cir.1971), cert. denied,408 U.S. 929, 92 S.Ct. 2497, 33 L.Ed.2d 341 (1972).*

[7] Tandy's allegations substantially meet the pleading requirements of a *Walker Process* violation of Section 2. First, Tandy has alleged as follows regarding "knowing and willful fraud." In 1969 and 1970, Intel Corporation developed a single chip general function central processing unit ("CPU"). The 1970 design included an 8 bit parallel path

microprocessor. Sometime in 1970, TI engineers became aware of the Intel designs and knowingly incorporated them into a design for a similar single chip CPU. In August of 1971, TI submitted patent applications based on the single chip CPU design that had originated at Intel. In these applications, "TI concealed from the United States Patent Office Intel's prior invention of the single chip CPU that transfers and processes data in parallel format." ¶ 13.

TI correctly points out that the term "concealed," standing alone, does not allege "knowing and willful" deceit or a clear "intent to deceive" as these terms have been defined in *Walker Process* and *Kingsdown,* respectively. *Walker Process, 382 U.S. at 177, 86 S.Ct. at 350; Kingsdown, 863 F.2d at 876.* Allegations that TI merely "concealed" Intel's prior art and TI's adoption of this prior art in its own design leave room for the possibility that TI negligently or inadvertently concealed these facts, and under *Walker Process* and *Kingsdown,* mere negligent or inadvertent concealment would not be enough to state a **Section 2** violation. *Id.*

However, this deficiency in Tandy's pleading is insubstantial. Under Rule 9(b), intent and knowledge "may be averred generally." Consequently, dismissing Tandy's *Walker Process* allegations for failure to sufficiently allege intent would only lead to the addition of one or two conclusory terms to the text of the complaint. To avoid burdening counsel and their clients with this sort of busy-work, the Court will deem Tandy's allegation of "concealment" to be equivalent to the conclusory allegation of intent under the terms of *Walker Process* and *Kingsdown.*

Second, with regard to causation, Tandy has pled that "as a result" of the alleged fraud, the patents in question were issued by the Patent Office. This allegation exceeds "but for" causation and approaches the language of "direct causation" typically adopted in allegations of proximate cause. This allegation is sufficient to state a *Walker Process* violation of **Section 2.** It is important to note here that Tandy's allegations have closed the causal gap described in the December 28 Order, and all of the patents identified by Tandy resulted from the alleged fraudulent applications either directly or indirectly and divisional or continuation-in-part patents.

Finally, Tandy has plead that the result of TI's fraudulent acquisition of patents has been that "TI has monopolized, combined with ... others to monopolize, and has attempted to monopolize the PC

Architecture Technology Market[.]" [FN6] ¶ 42. This allegation sufficiently alleges the "remaining elements" of a **Section 2** violation.

> FN6. This market is further defined as the market "for licenses to patents that claim a general purpose computing system utilizing a single semiconductor chip CPU which transfers and processes data." ¶ 19.

TI complains that Tandy's market power allegation is conclusory, and fails to identify the precise form and degree of market power arising from the each of the allegedly illegal patents. While accurate, this criticism does not affect the sufficiency of Tandy's complaint. Tandy's allegation **\*1041** meets the notice requirement of **Rule 8,** and Tandy is not further required to plead its evidence in the complaint.

TI also complains that Tandy's allegation that the illegal patents form basis for a monopoly, attempt to monopolize, or combination to monopolize, conflicts with other allegations that TI's market power results from the "number, importance and/or uniqueness" of all its PC patents, including many that were legally obtained. ¶ 28. This criticism is meritless. It is well established that a plaintiff may offer conflicting allegations in the alternative in his complaint. *See e.g., Molsbergen v. United States, 757 F.2d 1016, 1018, n. 3 (9th Cir.1985).*

For the reasons offered above, Tandy's *Walker Process* allegations should not be stricken from the complaint.

2. Bad Faith Enforcement Of Patents.

[8] To state a claim for a **Section 2** violation based on the bad faith enforcement of a patent Tandy must allege that (1) TI had actual knowledge that certain patents were invalid; (2) TI attempted to enforce these patents with the specific intent to monopolize, attempt to monopolize, or combine with others to monopolize, the relevant market; and (3) TI has succeeded in gaining monopoly power, or "that a dangerous probability of success exist[s]." *Handgards, Inc. v. Ethicon, Inc., 743 F.2d 1282, 1288 (9th Cir.1984)* ( "*Handgards II* "); *Handgards, Inc. v. Ethicon, 601 F.2d 986, 994-96 (9th Cir.1979)* ("*Handgards I* ").

TI's only criticism of Tandy's allegation in support of

a *Handgards* claim is that Tandy has not sufficiently alleged the first element: Actual knowledge. As we have already discussed with regard to Tandy's *Walker Process* claim, Tandy has alleged that TI had actual knowledge that the patents at issue here were acquired through fraud. This establishes actual knowledge of invalidity with regard to Tandy's *Handgards* claim. Thus, Tandy's *Handgards* allegations should not be stricken.

### 3. Conclusion.

For the foregoing reasons, Tandy has sufficiently alleged violations of Section 2 by illegal tying, fraudulent acquisition of patents, and bad faith enforcement of patents. TI's motion to dismiss Tandy's second claim will be denied entirely.

### C. *Tandy's Third Declaratory Relief Claim For A Finding Of Patent Invalidity And Non-Infringement.*

TI attacks Tandy's third claim in two ways. First, TI argues that Tandy's allegations in its third claim fail to meet the requirements of Rules 8 and 9. Second, Tandy urges the Court to reconsider its prior finding that Tandy's third claim is justiciable. We treat these in order.

### 1. Tandy's Allegations Do Not Meet The Requirements Of Rules 8 and 9.

Tandy's allegation must be considered in two groups. First in paragraph 47, subparagraphs (c), (d), (f) and (g), Tandy incorporates the fraud allegations made in support of its antitrust claims. In the same paragraphs Tandy reforms these allegations into an invalidity claim based on, *inter alia*, the inequitable conduct doctrine and statutes imposing a duty of candor.[FN7] For the reasons already stated with regard to Tandy's first two claims for relief, these incorporated factual allegations meet the requirements of Rules 8 and 9.

FN7. 37 C.F.R. § 1.56; 35 U.S.C. § 6.

After properly incorporating its prior fraud allegations, however, Tandy offers a second group of allegations that is more problematic.

[9] For example, the first sentence of paragraph 47 identifies nine TI patents, and the second alleges that all of these patents are invalid for "one or more" of the reasons stated in the following subparagraphs. Tandy has made no effort to link patents with defects despite Tandy's admission that only one or two defects apply to each individual patent.

This sweeping allegation fails to meet the "fair notice" requirement of Rule 8. Given the length of Tandy's list of defects, Tandy's failure to match particular defects **\*1042** with specific patents reduces the meaning of paragraph 47 to a general allegation that each patent is defective, period. Tandy cannot begin to preserve relevant evidence, identify related claims, or begin to prepare an answer on the basis of this generic allegation.

[10] In addition, paragraph 47(a) alleges that nine TI patents, including four that Tandy has not associated with the alleged Intel design fraud, are invalid because of "TI's failure to comply with the requirements of 35 U.S.C. § § 101, 102, 103, and 112." This pleading is radically insufficient. Even if, as Tandy argues, Tandy could state a claim by simply pleading the language of these statutes, Tandy cannot state a claim by pleading the citation. More importantly, conclusory pleading of the statutory language is insufficient to meet the fair notice requirement of Rule 8 in the present context. Given the complexity of the processes at issue, and the close interrelation between many of the patents controlled by TI, TI cannot assess the strength of Tandy's claims, begin to preserve relevant evidence, or identify related claims or cross-claims without some indication from Tandy of the factual basis for its invalidity claims with regard to each patent.

For the foregoing reasons, paragraph 47 will be stricken from the complaint and the third claim will be dismissed with leave to amend. If Tandy chooses to amend and refile its third claim, Tandy must link each challenged patent with particular defects, and allege some factual basis for each alleged defect. With regard to the five patents connected with the alleged Intel design fraud, the requirement for factual allegations will be met by incorporation of the allegations which Tandy has alleged in connection with its above discussed antitrust claims.

### 2. Tandy's Third Claim Remains Justiciable.

[11] As the Court explained at length in the December 28 Order, the existence of a valid license agreement is not a bar to a declaratory relief action brought by a licensee challenging the validity of the

Case 4:07-cv-04582-SBA    Document 21-4    Filed 10/09/2007    Page 10 of 11

771 F.Supp. 1033                                                                    Page 10
771 F.Supp. 1033, 1991-1 Trade Cases  P 69,446, 20 U.S.P.Q.2d 1207
**(Cite as: 771 F.Supp. 1033)**

patents held by the licensor. *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 880 (Fed.Cir.1983); *Lear, Inc. v. Adkins,* 395 U.S. 653, 671, 89 S.Ct. 1902, 1911, 23 L.Ed.2d 610 (1969). This rule reflects the determination of the Federal Circuit and the Supreme Court that the public's interest in the elimination of invalid patents outweighs the licensor's interest in the reliability of his license contract. *Id.*

Thus, where the "totality of the circumstances" demonstrates a sufficient apprehension of the pendency of a dispute to guarantee the sharp presentation of issues essential to the proper functioning of adversary proceedings, a licensee may bring a declaratory relief action for patent invalidity against a licensor despite the existence of a valid license agreement. *Id.; Aetna Life, Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937) (delineating the "actual controversy" requirement for declaratory relief actions). In applying the "totality of the circumstances" test the Federal Circuit has been careful to reject litmus tests and has emphasized that the unique facts of each case must be reviewed and judged separately. *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735 (Fed.Cir.1988) ( "[T]there is no specific, all-purpose test.")

In the December 28 Order, the Court reviewed the entire record in this matter and held that the "totality of the circumstances" demonstrates that Tandy has a sufficient apprehension of suit to bring a declaratory relief action for patent invalidity in the form of its third claim for relief here. In the present motion, TI asks the Court to reconsider the December 28 Order and reverse its conclusion. TI's request will be denied.

As the Court noted in the December 28 Order, TI has repeatedly asserted infringement against a number of Tandy products. Moreover, TI is currently involved in parallel litigation against a number of companies that make products similar to Tandy's in the Northern District of Texas. Hence, TI's ability and willingness to litigate Tandy's third claim is well demonstrated.

**\*1043** The present proceedings regarding TI's second motion to dismiss have only confirmed the Court's view that Tandy's third claim is properly brought. At the heart of Tandy's third claim is the alleged Intel design fraud. This fraud is the same set of transactions and occurrences which the parties will necessarily be litigating in connection with Tandy's first two claims for antitrust violations. In fact, it is arguable that if Tandy failed to bring an invalidity

claim in connection with its antitrust claims it might be barred from doing so later under the provisions of Rule 13. Alternatively, if the Court found Tandy's claim non-justiciable now, Tandy may never be allowed to try this claim because the factual questions critical to this claim will be resolved in the present suit, and might well bind a future separate proceeding addressing Tandy's third invalidity claim.

In light of the facts already identified in the December 28 Order, and the close connection between the Tandy's antitrust claims and Tandy's invalidity suit, the Court's prior conclusion that Tandy's third claim is justiciable was proper and will not be overturned.

### D. *Tandy's Fourth Declaratory Relief Claim For An Implied License.*

[12][13] The Court may exercise pendent jurisdiction over a claim arising under state law when: (1) the complaint asserts a valid claim arising under federal law; (2) the complaint asserts a claim arising under state law which shares "a common nucleus of operative facts" with the federal claim; and (3) the state law claim is such that a plaintiff "would ordinarily be expected to try them all in a single judicial proceeding." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The Court's exercise of pendent jurisdiction is discretionary, and the Court may decline to exercise such jurisdiction in the interest of economy, convenience, and fairness to the parties. *Moor v. County of Alameda,* 411 U.S. 693, 716-17, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973) (identifying discretionary factors).

[14] In its fourth claim for relief Tandy seeks a judicial "abatement" of its express License Agreement with TI. In particular, Tandy argues that it had acquired an implied license to many of the components covered by the License Agreement by purchasing these components from other licensees. Consequently, Tandy reasons, the Court should find that Tandy is not bound by the Licensing Agreement because Tandy mistakenly acquired by express contract rights it already had through the purchase of components from other licensees.

The meaning and effect of the TI-Tandy License Agreement is governed by state contract law. *See Consolidated World Housewares, Inc. v. Finkle,* 831 F.2d 261 (Fed.Cir.1987); *accord Diematic Manufacturing Corp. v. Packaging Industries, Inc.,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

771 F.Supp. 1033                                                                                                                    Page 11
771 F.Supp. 1033, 1991-1 Trade Cases  P 69,446, 20 U.S.P.Q.2d 1207
**(Cite as: 771 F.Supp. 1033)**

381 F.Supp. 1057 (S.D.N.Y.1974).    Thus, the only basis for jurisdiction over Tandy's fourth claim is the doctrine of pendent jurisdiction discussed above.

The Court declines to exercise pendent jurisdiction over the fourth claim.    Tandy's fourth claim arises from Tandy's and TI's dealings with certain component suppliers.    The fourth claim shares no common nucleus of operative facts with Tandy's first three claim, which arise primarily from the allegations of fraud in the acquisition of patents by TI.

Furthermore, accepting pendent jurisdiction of the fourth claim would not serve economy or fairness. Indeed, given the discrete factual basis of the fourth claim, appending the fourth claim to the present litigation would only enhance the likelihood of delay and confusion.

Because the Court declines pendent jurisdiction, Tandy's fourth claim will be dismissed.


## IV. CONCLUSION.

For the foregoing reasons, TI's motion to dismiss Tandy's first four claims is GRANTED IN PART AND DENIED IN PART.    With regard to Tandy's first and second claims for relief, TI's motion is DENIED.    With regard to Tandy's third claim, TI's motion is GRANTED WITH LEAVE TO AMEND. With regard to Tandy's **\*1044** fourth claim, TI's motion is GRANTED WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

N.D.Cal.,1991.
Grid Systems Corp. v. Texas Instruments Inc.
771 F.Supp. 1033, 1991-1 Trade Cases  P 69,446, 20 U.S.P.Q.2d 1207

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                    Page 1

Slip Copy, 2001 WL 36043487 (N.D.Cal.)

**(Cite as: Slip Copy)**

Network Caching Technology, LLC v. Novell, Inc.
N.D.Cal.,2001.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
NETWORK CACHING TECHNOLOGY, LLC,
Plaintiff,
v.
NOVELL, INC, et al, Defendants.
**No. C-01-2079-VRW.**

Dec. 31, 2001.

Blaney Harper, Jones Day Reavis & Pogue,
Washington, DC, Maria K. Nelson, Jones Day Reavis
& Pogue, Los Angeles, CA, for Plaintiff.
I. Neel Chatterjee, Monte M.F. Cooper, Rebecca P.
Burton, Orrick, Herrington & Sutcliffe LLP, Menlo
Park, CA, Mary T. Huser, Carolyn Chang, James
Paul Kleinberg, James B. Art, Bingham McCutchen
LLP, East Palo Alto, CA, for Defendants.

ORDER.
VAUGHN R. WALKER, J.
**\*1** Plaintiff Network Caching Techology, LLC
(NCT) moves to strike defendants Akamai
Technologies, Inc (Akamai) and Inktomi
Corporation's (Inktomi) affirmative defenses. See
Docs33, 34. Both defendants oppose these motions.
See Docs37, 39. For the following reasons, NCT's
motions to strike Akamai and Inktomi's affirmative
defenses are GRANTED in part and DENIED in part.

I

NCT initiated this action on May 29, 2001. NCT
alleges that defendants Novell, Inc, Volera, Inc,
Cacheflow, Inc, Akamai and Inktomi manufactured,
used or sold products infringing on NCT patents for
network services software products. [FN1]

> FN1. NCT is the assignee of four patents at
> issue in this case: 5,611,049 ('049 patent);
> 5,892,914 ('914 patent); 6,026,452 ('452
> patent) and 6,085,234 ('234 patent).

Defendants Akamai and Inktomi have answered the
complaint and filed counterclaims against NCT.
Akamai asserts affirmative defenses of failure to state

a claim upon which relief may be granted, patent
invalidity, prosecution history estoppel and lack of
standing. Akamai Ans (Doc # 31) at ¶¶ 37-40.
Inktomi's answer asserts 11 affirmative defenses,
three of which mirror Akamai's affirmative defenses
(patent invalidity, prosecution history estoppel and
lack of standing), and 8 further defenses (claim
construction estoppel, laches/equitable estoppel,
implied license, marking, patent misuse, non-
infringing uses, unclean hands and waiver). Inktomi
Ans (Doc # 25) at 5-7.

II

Under FRCP 12(f), the court may strike from any
pleading " any insufficient defense * * * ." Under
the liberal pleading requirements of the FRCP 8, a
pleading must contain a short and plain statement of
the defense. See *Heller Financial, Inc. v. Midwhey
Powder Co.* 883 F.2d 1286, 1294 (7th Cir.1989)."
The key to determining the sufficiency of pleading an
affirmative defense is whether it gives plaintiff fair
notice of the defense." *Wyshak v. City National Bank,*
607 F.2d 824, 827 (9th Cir.1979).

If, however, the affirmative defense involves
pleading and proving fraud or misrepresentation, the
heightened pleading standard of Rule 9(b) applies.
Under FRCP 9(b), notice pleading is not sufficient; a
party must plead time, place and content of the fraud
or misrepresentation. *In re GlenFed, Inc. Sec Lit.,* 42
F.3d 1541, 1548 (9th Cir.1994).

Defendant Inktomi argues that the special procedural
rules for patent cases, along with the local patent
rules of this district, suggest a specific timeline for
factual allegations. For example, 35 USC § 282
requires that a party asserting an invalidity defense
provide specific facts regarding its defense 30 days
before trial. 35 USC § 282. Similarly, the local rules
provide a timeline for the initial disclosure of
asserted claims and infringement contentions. See
Patent LR 3. These discovery timelines do not
abrogate a party's pleading responsibility under the
Federal Rules. The civil local rules, of which the
patent local rules are a part, specifically state that the
rule " supplement the applicable Federal Rules."
Civil LR 1-2(b). Furthermore, nothing in 35 USC §
282 suggests that a party need not plead sufficient
facts to give an adversary fair notice of one's

Slip Copy, 2001 WL 36043487 (N.D.Cal.)

**(Cite as: Slip Copy)**

defenses. Accord *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* 41 USPQ2d 1770, 1773 (N.D.Cal.1996) (striking bare conclusory statement of affirmative defense) (*Medtronic* ).

### III

**\*2** Akamai pleads four affirmative defenses. NCT challenges each of them in its motion to strike.

Akamai's first affirmative defense provides: " The Complaint, and each cause of action contained therein, fails to state a claim upon which relief can be granted." See Akamai Ans (Doc # 31) at ¶ 37. This affirmative defense is patterned directly on Form 20 of the FRCP. FRCP Form 20 (" The complaint fails to state a claim against defendant upon which relief can be granted." ). These forms " are sufficient under the rules." FRCP 84. Akamai's first affirmative defense provides fair notice of its defense; the court DENIES NCT's motion with respect to Akamai's first affirmative defense.

Akamai's second affirmative defense asserts patent invalidity. Akamai pleads: " The '049, '914, '452 and '234 Patents, and each claim thereof, is invalid because it fails to comply with the provisions of the patent laws, 35 USC § 100 et seq, including one or more of 35 USC § 101, 102, 103, and/or 112." NCT argues that these claims of invalidity are conclusory and lack sufficient factual allegation to comply with FRCP 8. The court in *Grid Systems Corp. v. Texas Instruments Inc.,* 771 F.Supp. 1033 (N.D.Cal.1991) struck down similarly vague pleadings because they gave the opposing party no indication on how to counter the claim. The court stated that, to be sufficient, claims of patent invalidity must " link each challenged patent with particular defects, and allege some factual basis for each alleged defect." Id at 1042; see also *Medtronic,* 41 USPQ2d at 1773. The pleading at issue here merely states that the patents are invalid without indicating which patent violates which section of the patent act. Akamai has failed to provide the faintest hint as to why they believe NCT's patents are invalid. Therefore, Akamai's assertion of invalidity is insufficient under *Grid Systems* and must be stricken.

Akamai suggests the following amendment:
The '049, '914, '452 and '234 patents, and each claim thereof, is invalid because it fails to meet the " conditions for patentability" of 35 USC §§ 101, 102, 103, and/or 112 because the alleged invention thereof

lacks utility, is taught by, suggested by, and/or, obvious in view of, the prior art, and/or is unsupported by the written description of the patented invention, and no claim of those patents can be validly construed to cover any Akamai product.

Akamai Br (Doc # 37) at 6. This language gives fair notice to NCT of Akamai's defense. While more factual specificity would be helpful, because NCT has not clarified its patent infringement claims at this stage in the litigation, the court does not require it. Accord *Advanced Cardiovascular Sys., Inc. v. Scimed Sys., Inc.,* 40 USPQ2d 1291, 1293-94 (N.D.Cal.1996) (*SciMed* ). The court finds that Akamai's proposed amended affirmative defense is sufficient under FRCP 8.

Akamai's third affirmative defense asserts prosecution history estoppel. Prosecution history estoppel is not a defense to direct patent infringement; it is a defense to the doctrine of equivalents. See *Medtronic,* 41 USPQ2d at 1774. Akamai has pled no facts to support its allegation. As NCT has not clarified its infringement claims to state whether those claims are based on the doctrine of equivalents, however, Akamai may be unable to plead facts at this point in the litigation. In its papers, NCT argues that Akamai's assertion of prosecution history estoppel is premature, relying on *Medtronics,* where the court stated:
**\*3** Since prosecution history estoppel is only applicable where the doctrine of equivalents has been raised as a means of constructing an infringement claim, prosecution history estoppel is not an affirmative defense.

Id. The court then struck the prosecution history estoppel affirmative defense with prejudice, but stated that this did not prevent Akamai from asserting the defense at an appropriate time.

In contrast, the Federal Circuit has discussed prosecution history estoppel, albeit in dicta, as an affirmative defense. See *Pharmacia & Upjohn Co. v. Mylan Pharms, Inc.,* 182 F.3d 1356, 1361 (Fed.Cir.1999); *Carman Industries, Inc. v. Wahl,* 724 F.2d 932, 942 n28 (Fed Cir1983). Other district courts assume that prosecution history estoppel is an affirmative defense. See, e g, *Kx Indus., LP v. Pur Water Purification Prods.,* 108 F Supp 2d 380, 382 (D.Del.2000); *Huang v. Auto-Shade, Inc.,* 945 F.Supp. 1307, 1309 (C.D.Cal.1996); *Paradigm Sales v. Weber Marking Sys.,* 880 F.Supp. 1247, 1253

Slip Copy                                                                                                 Page 3

Slip Copy, 2001 WL 36043487 (N.D.Cal.)

**(Cite as: Slip Copy)**

(N.D.Ind.1995); see also 35 USC § 282(1) (requiring that any defense due to patent unenforceability be pled). The confusing issue is one of timing: how can a defendant plead prosecution history estoppel with any factual allegations without knowing the plaintiff assertions regarding the doctrine of equivalents? Without deciding whether the label " affirmative defense" is necessary, the court strikes Akamai's prosecution history estoppel defense without prejudice to Akamai's re-pleading of this defense with factual allegations after NCT's infringement assertions are more clearly formed.

In its opposition, Akamai clarifies its conclusory assertion in its fourth affirmative defense alleging lack of standing. See Akamai Opp (Doc # 37) at 6-7. Specifically, Akamai asserts that its lack of standing defense hinges on the allegation that NCT does not own the patents at issue. Id. With this added factual allegation, Akamai provides fair notice to NCT of the basis of its lack of standing claim. The court therefore grants Akamai leave to amend its answer to include this clarification.

In conclusion, the court GRANTS in part and DENIES in part NCT's motion to strike Akamai's affirmative defenses. Akamai may file an amended answer by January 14, 2002.

                          IV

Inktomi's first, third and fifth affirmative defenses for patent invalidity, prosecution history estoppel and lack of standing are substantially similar to Akamai's second, third and fourth affirmative defenses, respectively. For the same reasons as given above, Inktomi's first, third and fifth affirmative defenses are stricken with leave to amend. Inktomi may assert a prosecution history estoppel defense if NCT's infringement claims include infringement under the doctrine of equivalents.

The court now considers the motion to strike each of Inktomi's remaining affirmative defenses in turn.

                          A

Inktomi's fourth affirmative defense asserts that NCT's claims are barred under the doctrine of laches and/or equitable estoppel. Inktomi pleads that NCT failed to " diligently pursue its infringement claims, if any, it had against Inktomi * * *." Inktomi Ans (Doc # 25) at 6. Inktomi further

asserts that it relied upon NCT's conduct. Id. To invoke the doctrine of laches, Inktomi must allege both neglect or delay in bringing suit and prejudice to Inktomi. See Medtronics II, 41 USPQ2d at 1774. Inktomi has not alleged prejudice. To invoke an estoppel defense, Inktomi must allege a knowingly misleading statement by NCT to Inktomi, Inktomi's reliance on that statement and material harm. See id at 1774, n5. Again, Inktomi has not plead material harm. Nor has Inktomi pointed to any statements which NCT made or why such statements are knowingly misleading. The court therefore strikes Inktomi's fourth affirmative defense without prejudice.

                          B

**\*4** Inktomi's affirmative defense alleging patent misuse states: " on information and belief, Inktomi alleges that [NCT's] claims under the Patents-at-issue has, through its licensing practices, improperly extended the Patents-at-issue beyond their lawful scope * * *." Inktomi Ans (Doc # 25) at 7. To assert patent misuse, a party must demonstrate that " the patentee has impermissibly broadened the ' physical or temporal scope' of the patent with anticompetitive effect." Windsurfing Int'l Inc. v. AMF, Inc., 782 F.2d 995, 1001 (Fed.Cir.1986). In addition, 35 USC § 271(d) provides specific exceptions to the patent misuse doctrine. See 35 USC § 271(d). Because of these specific exceptions, this court has previously found conclusory statements of a patent misuse affirmative defense insufficient. See SciMed, 40 USPQ2d at 1294. Inktomi's conclusory allegation, with reference only to NCT's licensing practices, does not provide fair notice of Inktomi's defense. The court therefore strikes Inktomi's eighth affirmative defense without prejudice.

                          C

Inktomi's tenth affirmative defense states in full: " As its tenth separate and affirmative defense, plaintiff's claims are barred by the doctrine of unclean hands." Again, this is a simple legal conclusion that does not provide any factual basis for the assertion of the defense. As courts in this district require inequitable conduct to be pled with particularity under FRCP 9(b), to the extent that defendant's affirmative defense for unclean hands rests on allegations of inequitable conduct before the PTO, defendant must plead these defense with the specificity required

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 4

Slip Copy, 2001 WL 36043487 (N.D.Cal.)

**(Cite as: Slip Copy)**

under Rule 9(b). See *Xilinx Inc. v. Altera Corp.,* 33 USPQ2d 1149, 1151 (ND Cal 1994). As Inktomi's legal conclusion does not provide any factual allegations to support the defense of unclean hands, the court strikes Inktomi's tenth affirmative defense without prejudice.

                                D

Inktomi also asserts affirmative defenses for claim construction estoppel and non-infringing use. Like the prosecution history estoppel defense, NCT argues these affirmative defenses are premature. Non-infringing use may be asserted against a claim based on contributory infringement under 35 USC § 271. As is the issue with the prosecution history estoppel defense, NCT has not yet refined its infringement claims to decide whether these claims include contributory infringement. Thus, NCT has not yet provided sufficient information regarding its claims for Inktomi to plead the non-infringing defense with any factual allegations. The court therefore strikes Inktomi's affirmative defense for non-infringing use without prejudice to Inktomi reasserting it after NCT has provided further information regarding the specifics of its infringement claims.

While this court has found no case which uses the term " claim construction estoppel," as Inktomi defines the term, claim construction estoppel is a doctrine which estops a patent holder from asserting a position on claim construction which contradicts the prosecution history. See Inktomi Opp (Doc # 39) at 13. For example, if a patentee defines a term while prosecuting its patent, that definition is binding on the patent holder. See *Southwall Tech, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1578 (Fed.Cir.1995). This argument comes into play in claim construction; it applies to literal infringement and infringement under the doctrine of equivalents. See id.As such, it is not premature for Inktomi to assert this defense now. Inktomi's answer alleges:
**\*5** [Because of the] admissions, representations, and amendments made on behalf of the applicant for such patent [before the PTO], [NCT] is estopped from asserting any construction of claims of the Patents-at-issue to cover or include any product made, used, sold, offered for sale, or imported into the United States by Inktomi.

Inktomi Ans (Doc # 25) at 5-6. This allegation contains some specific information regarding Inktomi's claim; at this early stage in the litigation,

the court finds this pleading sufficient. The court DENIES NCT's motion to strike with respect to Inktomi's second affirmative defense asserting claim construction estoppel.

                                E

Finally, Inktomi's sixth, seventh and eleventh for implied license, marking, and waiver are similar bare legal conclusions. All three affirmative defenses lack any factual allegations to support them. The court strikes these defenses without prejudice. Inktomi may file an amended answer by January 14, 2002.

                                IV

In sum, the court GRANTS in part and DENIES in part NCT's motion to strike Inktomi's affirmative defenses (Doc # 33) without prejudice. Specifically, the court does not strike Inktomi's second affirmative defense for claim construction estoppel but does strike Inktomi's other affirmative defenses without prejudice. In addition, the court GRANTS in part and DENIES in part NCT's motion to strike Akamai's affirmative defenses (Doc # 34) without prejudice. Specifically, the court strikes Akamai's second, third and fourth affirmative defenses but does not strike Akamai's first defense. Akamai and Inktomi may each file an amended complaint by January 14, 2002.

IT IS SO ORDERED.

N.D.Cal.,2001.
Network Caching Technology, LLC v. Novell, Inc.
Slip Copy, 2001 WL 36043487 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

315 F.Supp.2d 1046                                                                                Page 1
315 F.Supp.2d 1046
**(Cite as: 315 F.Supp.2d 1046)**



United States District Court,
N.D. California.
San Jose Division.
QARBON.COM INCORPORATED, Plaintiff,
v.
EHELP CORPORATION, Defendant.
**No. C 03-04319 JW.**

Feb. 26, 2004.

**Background:** Owner of patent for system to create media presentations of computer software sued competitor for infringement. Owner moved to dismiss or strike competitor's affirmative defenses and counterclaims.

**Holdings:** The District Court, Ware, J., held that:
(1) defendant's conclusory affirmative defenses would be stricken, with leave to amend, for failure to provide plaintiff with fair notice, and
(2) its conclusory counterclaims would be dismissed, with leave to amend, for failure to provide factual bases.
Motion granted.

West Headnotes

**[1] Federal Civil Procedure ⌬673**
170Ak673 Most Cited Cases
Plaintiff need not set out in detail facts upon which claim is based; rather, all that is required is short and plain statement of claim that will give defendant fair notice of what plaintiff's claim is and grounds upon which it rests. Fed.Rules Civ.Proc.Rule 8(b), 28 U.S.C.A.

**[2] Federal Civil Procedure ⌬1838**
170Ak1838 Most Cited Cases
In event pleading is dismissed for failure to state claim, leave to amend must be granted unless court determines that allegation of other facts could not cure deficiency. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Civil Procedure ⌬1150**
170Ak1150 Most Cited Cases
If court chooses to strike deficient or otherwise improper defense, leave to amend should be freely

given so long as there is no prejudice to opposing party. Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A.

**[4] Patents ⌬310.7(4)**
291k310.7(4) Most Cited Cases
Patent infringement defendant's conclusory affirmative defenses of waiver, estoppel, and unclean hands would be stricken, with leave to amend, for failure to provide plaintiff with fair notice; defendant merely referred to doctrines, without setting forth their elements or any factual basis for their application. Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A.

**[5] Patents ⌬310.7(5)**
291k310.7(5) Most Cited Cases
Patent infringement defendant's conclusory counterclaim for declaration of patent's invalidity would be dismissed, with leave to amend, for failure to state claim; although actual controversy existed, given existence of underlying infringement claim, counterclaim failed to provide any factual basis for invalidating patent. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6] Federal Civil Procedure ⌬636**
170Ak636 Most Cited Cases
Patent infringement defendant's counterclaim for unfair competition under California law, alleging "unlawful, unfair or fraudulent business practices," was not grounded in fraud, and thus did not have to meet fraud pleading particularity requirements; factual allegations underlying claim, which was based on knowingly false representations about patent, did not include any intent to defraud or justifiable reliance. West's Ann.Cal.Bus. & Prof.Code § 17200; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[7] Patents ⌬310.7(5)**
291k310.7(5) Most Cited Cases
Patent infringement defendant's conclusory counterclaim for unfair competition would be dismissed, with leave to amend, for failure to allege claim with reasonable particularity; counterclaim did not provide factual basis for its allegation that plaintiff knew or should have known that patent was invalid or not infringed when it filed infringement action. Fed.Rules Civ.Proc.Rules 8(b), 12(b)(6), 28 U.S.C.A.

Patents ⌬328(2)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

315 F.Supp.2d 1046                                                                                    Page 2

315 F.Supp.2d 1046

**(Cite as: 315 F.Supp.2d 1046)**

291k328(2) Most Cited Cases
6,404,441. Cited.
**\*1047** Charles John Kulas, John Wade Carpenter, Carpenter & Kulas, LLP, Palo Alto, CA, for Plaintiff.

Ann M. Heimberger, Quinn Emanuel Urquhart Oliver & Hedges L., San Francisco, CA, Claude M. Stern, Quinn Emanuel et al, Redwood City, CA, Kent M. Walker, Cooley Godward LLP, San Diego, CA, for Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES AND DISMISS COUNTERCLAIMS WITH LEAVE TO AMEND**

WARE, District Judge.

## I. INTRODUCTION

In this patent infringement case, the Court considers whether affirmative defenses and counterclaims stated in conclusory terms provide sufficient notice under Rule 8 of the Federal Rules of Civil Procedure. Plaintiff Qarbon.com Incorporated ("Qarbon") filed a motion to dismiss Defendant eHelp Corporation's ("eHelp") three affirmative defenses and two counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. In the alternative, Qarbon moved to strike eHelp's affirmative defenses under Rule 12(f). The motions were heard on February 2, 2004. For reasons stated below, the Court grants Qarbon's motion to strike affirmative defenses, with leave to amend and grants Qarbon's motion to dismiss the two counterclaims, also with leave to amend.

## II. BACKGROUND

Qarbon is a Delaware corporation with its principal place of business in San Jose, California. Qarbon is allegedly the owner of United States Patent No. 6,404,441 B1 ("the '411 patent") issued on June 11, 2002. The '411 patent was issued to Alexandre Chailleux and assigned to JET Software, Inc. Qarbon claims that prior to a name change, Qarbon was formerly known as JET Software, Inc. The '411 patent teaches, among other things, a system for generating media presentations of software application programs.

In its complaint for patent infringement, Qarbon claims that eHelp is infringing or has infringed the '411 patent by manufacturing, selling, offering for sale, importing, and/or using embodiments of the patented invention. Qarbon also alleges that eHelp has rejected Qarbon's offer for a license under the '411 patent. As

count II of its complaint, Qarbon alleges that eHelp is actively inducing infringement by knowingly providing documentation and personnel support to assist in the operation of the embodiments of the patented invention. As count III of its complaint, Qarbon alleges that eHelp is contributorily infringing the '411 patent by knowingly manufacturing and selling embodiments of the patented invention that are especially made or adapted for infringing use and are incapable of substantial noninfringing use.

**\*1048** In response, eHelp filed an answer and counterclaim for declaratory judgment and unfair competition. eHelp is a Delaware Corporation with a principal place of business in San Diego, California. In its answer, eHelp denies that it infringes directly, contributorily, or through inducement, any valid or enforceable patent claim. Specifically, eHelp denies the allegation that Qarbon is the owner of the '411 patent or that it has any right to license it. As its affirmative defenses, eHelp asserts that the '411 patent is invalid for failure to satisfy the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112 and that Qarbon is barred from recovery under the doctrines of waiver, estoppel and unclean hands as well as for failing to notice or mark as is statutorily required under 35 U.S.C. § 287.

As its first counterclaim, eHelp seeks declaratory judgment that the '411 patent is invalid and void under 35 U.S.C. §§ 100 et seq. and specifically invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112. As its second counterclaim, eHelp alleges unfair competition pursuant to California Business & Professional Code 35 U.S.C. §§ 17200 et seq. eHelp claims that Qarbon and eHelp are competitors and that Qarbon is asserting its rights under the '411 patent in bad faith when Qarbon knows or should have known about the invalidity of the '411 patent or the noninfringing nature of eHelp's conduct. eHelp further alleges that Qarbon is making misleading statements regarding the scope, enforceability, and noninfringement of the '411 patent.

Presently before the Court is Qarbon's motion to strike eHelp's three affirmative defenses pursuant to Rule 12(f) and to dismiss eHelp's two counterclaims for declaratory judgment and unfair competition under Rule 12(b)(6). During oral arguments, Qarbon conceded that Rule 12(b)(6) motion is inappropriate to dismiss affirmative defenses and the Court will therefore not address this issue any further.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

315 F.Supp.2d 1046                                                                                          Page 3

315 F.Supp.2d 1046
**(Cite as: 315 F.Supp.2d 1046)**

### III. STANDARDS

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. "A claim may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds Inc.,* 749 F.2d 530, 534 (9th Cir.1984). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987).

[1][2] A claimant need not set out in detail the facts upon which the claim is based. *Gibson,* 355 U.S. at 47, 78 S.Ct. 99. "To the contrary, all the [Federal Rules of Civil Procedure] require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* In the event a pleading is dismissed for failure to state a claim, leave to amend must be granted unless the court determines that allegations of other facts could not cure the deficiency. *Bonanno v. Thomas,* 309 F.2d 320, 322 (9th Cir.1962).

[3] Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A defense may be struck if it fails to provide "fair notice" of the basis of the defense. **\*1049** *Advanced Cardiovascular Sys. v. Scimed Sys., Inc.,* No. C-96-0950 DLJ, 1996 WL 467277, at \*2, 40 U.S.P.Q.2d (BNA) 1291 (N.D.Cal. July 24, 1996), 1996 U.S. Dist. LEXIS 11702, at \*7-\*8. If the court chooses to strike a defense, leave to amend should be freely given so long as there is no prejudice to the opposing party. *Wyshak v. City Nat'l Bank,* 607 F.2d 824, 826 (9th Cir.1979).

### IV. DISCUSSION
**A. eHelp's Affirmative Defenses Do Not Provide "Fair Notice" to Qarbon**

[4] Qarbon contends that eHelp's affirmative defenses of waiver, estoppel, and unclean hands must be stricken because the defenses are insufficient and contain immaterial, impertinent and scandalous information. Qarbon further argues that eHelp has not pled with sufficient particularity to give Qarbon "fair notice" of the defenses. Specifically, Qarbon maintains that it does not know what is being waived, or the type of estoppel, whether prosecution or collateral, that is being pled, or for that matter, the grounds for unclean hands. eHelp, however, contends that the appropriate standard for a Rule 12(f) motion is not whether the affirmative defenses provide fair notice but whether the defenses are sufficient as a matter of law. Arguing that its affirmative defenses are sufficient as a matter of law and contain no "scandalous" matter, i.e., matter that is exceptionally prejudicial and irrelevant, eHelp urges the Court to deny Qarbon's Rule 12(f) motion.

Affirmative defenses are governed by the same pleading standard as complaints. Rule 8(b) provides, "[a] party shall state in short and plain terms the party's defenses to each claim asserted..." Like complaints, affirmative defenses must give plaintiff "fair notice" of the defense being advanced. *Wyshak,* 607 F.2d at 827.

In the present case, eHelp's affirmative defenses fail to provide "fair notice" of what the defense is and the grounds upon which it rests. *See Conley,* 355 U.S. at 47, 78 S.Ct. 99. eHelp alleges, based on information and belief, that Qarbon must be "barred from recovery in whole or in part" by the doctrines of waiver, estoppel, and unclean hands. eHelp does not specify what the defense is--whether it is asserting a single type of estoppel or several types of estoppel such as prosecution history estoppel, equitable estoppel, or some other type of estoppel. As such, eHelp does not provide fair notice of its affirmative defenses.

eHelp's general allegations also do not provide Qarbon with fair notice of the grounds for the defenses. A reference to a doctrine, like a reference to statutory provisions, is insufficient notice. *See Scimed Sys.,* 1996 WL 467277, at \*3, 1996 U.S. Dist. LEXIS 11702, at \*7-\*8 ("Defendant's general reference to a series of statutory provisions [35 U.S.C. § 1 *et seq.*] does not provide plaintiff with fair notice of the basis of this defense"). Furthermore, eHelp's affirmative defenses do not set forth the elements of the defense. *See Sun Microsystems, Inc. v. Datram Corp.,* No. CIV. 96-20708 SW, 1997 WL 50272, at \*4 (N.D.Cal. Feb.4, 1997) (finding that defendant has provided plaintiff with "fair notice" by sufficiently setting forth the elements of the estoppel defense); *Advanced Cardiovascular Sys. v. Medtronic, Inc.,* No.

315 F.Supp.2d 1046                                                                                    Page 4

315 F.Supp.2d 1046
**(Cite as: 315 F.Supp.2d 1046)**

C-95-3577 DLJ, 36 Fed. R. Serv.3d (Callaghan) 648, at *29, 1996 WL 467293 (N.D.Cal. July 24, 1996), 1996 U.S. Dist. LEXIS 11696 ("**To plead equitable estoppel, a party must allege [the] three essential elements.**"). Because eHelp simply refers to the doctrines without setting forth the elements of its affirmative defenses, eHelp does not provide "fair notice" of its defenses.

**\*1050** eHelp also fails to allege the factual basis for its affirmative defenses. In *Medtronic*, 1996 WL 467293, at *9-10, 1996 U.S. Dist. LEXIS 11696, at *29-*30, the court struck Medtronic's affirmative defense of equitable estoppel on the ground that the factual basis for the defense--the allegations that the plaintiff had misled the PTO and the public regarding their patents-did not support an equitable estoppel defense, but rather supported an inequitable conduct defense. The court also struck the defense of unclean hands to the extent that the defense rested on allegations of inequitable conduct, which the court had previously found to be insufficiently pled. *Id.* at *13, 1996 U.S. Dist. LEXIS 11696, at *40. Similarly, in *Datram*, 1997 WL 50272, at *4, the court struck Datram's affirmative defense of implied license/estoppel to the extent that Datram had failed to provide factual allegations in support of its defense. Given that eHelp does not provide any factual basis for its three affirmative defenses, the Court grants Qarbon's motion to strike eHelp's affirmative defenses of waiver, estoppel and unclean hands with leave to amend.

**B.    Qarbon's Motion to Dismiss eHelp's Counterclaims Under Rule 12(b)(6)**

Pursuant to Rule 12(b)(6), Qarbon moves the Court to dismiss eHelp's counterclaims for declaratory judgment and unfair competition for failure to state a claim.

**1.    eHelp Does Not Adequately Plead its Counterclaim for Declaratory Judgment**

[5] Qarbon contends that eHelp's counterclaim for declaratory judgment must be dismissed because it fails to provide any factual basis for the existence of an actual, substantial controversy or the grounds for invalidating and voiding the '411 patent. According to Qarbon, a conclusory statement asserting invalidity under all relevant sections of the patent law is not "fair notice." eHelp, however, argues that it has pled an actual controversy as demonstrated by Qarbon's filing

of a complaint of patent infringement and eHelp's denials of infringement and contention of invalidity. eHelp further contends Qarbon has "fair notice" given that eHelp has alleged invalidity under the several patent statutes.

To maintain a counterclaim for declaratory judgment, there must be "a case of actual controversy." 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction ...., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested parties....").

eHelp's pleadings demonstrate the presence of actual controversy. Where a party has actually been charged with patent infringement, "there is, *necessarily,* a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the Act." *Cardinal Chem. Co. v. Morton Int'l,* 508 U.S. 83, 96, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (emphasis in original). Given that Qarbon has filed a complaint for patent infringement and eHelp has answered that it does not infringe the '411 patent and that the '411 patent is invalid, there is an actual controversy in this case.

eHelp, however, does not adequately plead its counterclaim for declaratory judgement. In alleging patent invalidity, eHelp simply pleads the citation. eHelp alleges that "the '441 patent is invalid and void under the provisions of Title 35, United States Code §§ 100 *et seq.,* and specifically, §§ 101, 102, 103, and/or 112 ...." Counterclaim ¶ 6. Such a pleading is "radically insufficient." *Grid Sys. Corp. v. Texas Instruments, Inc.,* 771 F.Supp. 1033, 1042 (N.D.Cal.1991). The Court will not accept wholly conclusory allegations. **\*1051** *Kennedy v. H & M Landing, Inc.,* 529 F.2d 987, 989 (9th Cir.1976); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

By making general allegations, eHelp fails to give "fair notice" to Qarbon. "Effective notice pleading should provide the defendant with a basis for assessing the initial strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related counter- or cross-claims, and for preparing an appropriate answer." *Grid Sys. Corp. v. Texas Instruments, Inc.,* 771 F.Supp. 1033, 1037 (N.D.Cal.1991). eHelp, by alleging several grounds for invalidating and voiding the '411 patent, does not provide Qarbon with a basis for assessing the strength

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

315 F.Supp.2d 1046                                                                                    Page 5

315 F.Supp.2d 1046
**(Cite as: 315 F.Supp.2d 1046)**

of eHelp's counterclaim. Because the invalidity counterclaim does not provide "**a more specific statement of the basis**" of the counterclaim, *Medtronic*, **1996 WL 467293, at \*13, 1996 U.S. Dist. LEXIS 11696, at \*39**, the Court grants Qarbon's motion to dismiss eHelp's counterclaim for declaratory judgment with leave to amend.

**2. eHelp Fails to Plead its Counterclaim for Unfair Competition With Reasonable Particularity**

[6] Qarbon argues that eHelp must plead its counterclaim for unfair competition under the heightened pleading standard set forth in Rule 9(b), Fed.R.Civ.P., because the counterclaim is "grounded in fraud." Qarbon further argues that to the extent the counterclaim is not completely grounded in fraud, eHelp's averments of fraud must be disregarded and eHelp's non-fraud allegations must provide "fair notice" and be examined under the "reasonable particularity" standard espoused in *Khoury v. Maly's of California*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993). eHelp, however, contends that its counterclaim does not have to meet the *Khoury* standard or the Rule 9(b) standard. eHelp also maintains that it has put Qarbon on notice about its counterclaim by alleging that Qarbon has pursued the '411 patent in bad faith and has misrepresented about the '411 patent.

Cal. Bus. & Prof.Code § 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice ..." and establishes three types of unfair competition--unlawful, unfair, or fraudulent acts or practices. *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1153, 93 Cal.Rptr.2d 439 (2000). "Unlawful" practices are those practices that are prohibited by law, whether "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 839, 33 Cal.Rptr.2d 438 (citing *People v. McKale*, 25 Cal.3d 626, 632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)). "Unfair" practices are those practices "whose harm to the victim outweighs its benefits." *Id.* (citing *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543 (1980)). "Fraudulent" practices are those practices that are likely to deceive the public and do not refer to the tort of fraud. *Id.; Heighley v. J.C.Penney Life Ins. Co.*, 257 F.Supp.2d 1241, 1259 (C.D.Cal.2003) (citing *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 211, 197 Cal.Rptr. 783, 673 P.2d 660 (1983)).

Fraud is not an essential element of Cal. Bus. & Prof.Code § 17200. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir.2003). In cases where fraud is not an essential element of a claim but the defendant chooses to allege fraudulent practices by the plaintiff, the court's determination of whether the claim must meet the particularity requirement of Rule 9(b) depends on whether the claim is said to be "grounded in fraud." *Id.* at 1103-04. A claim is said to be "grounded in fraud" if the defendant "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that \*1052 course of conduct as the basis of a claim." *Id.* at 1103. By contrast, if the defendant chooses to allege some fraudulent and some non-fraudulent conduct, rather than a unified course of fraudulent conduct, "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.* at 1104.

In the present case, eHelp alleges that Qarbon "has engaged in unfair, unlawful, or fraudulent business practices by asserting and pursuing purported rights and claims under the '411 Patent in bad faith when [Qarbon] knew or should have known that the patent is invalid or not infringed and making misleading statements about the scope, enforceability or infringement of the ' 411 Patent." Counterclaim, ¶ 12.

To the extent that eHelp asserts unfair or unlawful business activities, it does not allege fraudulent conduct because the assertions neither contain the word fraud nor do they allege facts that would necessarily constitute fraud. *See Vess*, 317 F.3d at 1105 ("Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word "fraud" is not used)."). "Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, *intent to defraud, justifiable reliance,* and damages." *Id.* (emphasis added). eHelp does not allege Qarbon's intent to fraud or the public's justifiable reliance on Qarbon's misrepresentation. Rather, eHelp alleges that Qarbon is knowingly making false representations about the '411 patent and seeks "injunctive relief and restitution." Counterclaim, ¶ 14. As such, eHelp's counterclaim for unfair and unlawful activities is not grounded in fraud.

Insofar as eHelp alleges that Qarbon is engaged in "fraudulent business practices," eHelp does not have to plead with Rule 9(b) specificity. eHelp is neither averring fraud nor is it alleging facts that necessarily

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

constitute fraud. eHelp is not averring fraud because the term "fraudulent" in Cal. Bus. & Prof.Code § 17200 does not refer to the common law tort of fraud. "A violation [of the fraud] prong can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." *Heighley,* 257 F.Supp.2d at 1259 (citing *Committee on Children's Television,* 35 Cal.3d at 211, 197 Cal.Rptr. 783, 673 P.2d 660). eHelp merely paraphrases Cal. Bus. & Prof.Code § 17200's definition of unfair competition as "any unlawful, unfair or fraudulent business act or practice ..." when it counterclaims that Qarbon has engaged in "unlawful, unfair or fraudulent business practices." As such, eHelp is not averring fraud. eHelp is also not alleging facts that necessarily constitute fraud because the factual basis for the fraudulent practices allegation is the same as that for unfair and unlawful practices and the Court has previously found the factual allegations to not constitute fraud.

Because eHelp has not averred fraud in its unfair competition counterclaim, eHelp need only plead its counterclaim under the *Khoury* Rule 8 "reasonable particularity" standard. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F.Supp. 1303, 1316 (N.D.Cal.1997) (stating that parties alleging unfair business practices "must state with reasonable particularity the facts supporting the statutory elements of the violation.") (quoting *Khoury,* 14 Cal.App.4th at 619, 17 Cal.Rptr.2d 708); *GlobeSpan, Inc. v. John O'Neill,* 151 F.Supp.2d 1229, 1236 (C.D.Cal.2001) (same); *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 167 F.Supp.2d 1114, 1125 (C.D.Cal.2001) (same).

[7] eHelp, however, does not allege the unfair competition counterclaim with "reasonable particularity." eHelp does not provide factual basis for the allegation that **\*1053** Qarbon knows or should have known that the '411 patent was invalid or not infringed when Qarbon filed the present action. In *Raines v. Switch Mfg.,* No. C-96-2648 DLJ, 44 U.S.P.Q.2d (BNA) 1195, at \*15, 1997 WL 578547 (N.D.Cal. July 28, 1997), 1997 U.S. Dist. LEXIS 13621, the court dismissed defendant's counterclaim for unfair competition on the ground that defendant had failed to establish a factual basis for the allegations of bad faith. The court stated, "a defendant must provide some factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable when plaintiff filed the present action." *Id.* 1997 WL 578547, at \*4, 1997 U.S. Dist. LEXIS 13621 at \*12

(citing *Scimed Sys.,* 1996 WL 467277 at \*4, 1996 U.S. Dist. LEXIS 11702, at \*10). Because eHelp does not allege its counterclaim for unfair competition with "reasonable particularity," the Court grants Qarbon's motion to dismiss the unfair competition counterclaim with leave to amend.

## V. CONCLUSION

The Court grants Qarbon's motion to strike the subject affirmative defenses, with leave to amend within 20 days from the date of this Order. The Court also grants Qarbon's motion to dismiss the subject counterclaims, with leave to amend within 20 days of the date of this Order.

315 F.Supp.2d 1046

END OF DOCUMENT

Westlaw.

C

Security People, Inc. v. Classic Woodworking, LLC
N.D.Cal.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
SECURITY PEOPLE, INC., Plaintiff,
v.
CLASSIC WOODWORKING, LLC, Defendant.
**No. C-04-3133 MMC.**

March 4, 2005.

Frear Stephen Schmid, Attorney at Law, San Francisco, CA, for Plaintiff.
Lael D. Beloate, Robert P. Andris, Ropers Majeski Kohn & Bentley, Redwood City, CA, for Defendant.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS AND STRIKE DEFENDANT'S COUNTERCLAIM; VACATING HEARING

>Docket No. 26)

CHESNEY, J.
**\*1** Before the Court is the motion filed February 2, 2005 by plaintiff Security People, Inc. ("Security") to dismiss and to strike defendant Classic Woodworking, LLC's ("Classic") counterclaim. Classic has filed opposition to the motion, to which Security has replied. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, *see* Civil L.R. 7-1(b), and hereby VACATES the March 11, 2005 hearing. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

BACKGROUND

In a complaint filed in this Court on August 2, 2004, Security alleges that Classic infringes United States Patent No. 6,655,180 ("the '180 patent"), entitled "Locker Lock With Adjustable Bolt," and asserts causes of action against Classic for patent infringement and unfair competition. (*See* Compl. ¶ ¶ 3-8.)

On January 10, 2005, Classic filed an answer and counterclaim for declaratory relief. Classic alleges that the '180 patent "is invalid, null, void and/or unenforceable for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C. § 102, 103, and/or 112 as the disclosed subject matter of the '180 patent is both anticipated and obvious in light of United States Patents 5,886,644 and 5,894,277 and 5,473,922." FN1(*See* Counterclaim ¶ 8.) Classic also asserts 23 affirmative defenses. (*See* Answer at 3-8.)

> FN1. The Court notes that although the counterclaim also alludes to a claim for monopolization and attempted monopolization in violation of the Sherman Act, (*see* Counterclaim ¶ 1 and Prayer for Relief ¶ 3), no such claim is actually pleaded.

Security now moves to dismiss Classic's counterclaim and to strike the first, second, sixth, seventh, tenth, fourteenth, fifteenth, sixteenth, seventeenth, nineteenth, twenty-first, and twenty-third affirmative defenses.

LEGAL STANDARDS

A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. *See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). Material that is properly submitted as part of the complaint, however, may be considered. *See id.*Documents whose contents are alleged in the complaint, and whose authenticity no

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 645592 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

party questions, but which are not physically attached to the pleading, also may be considered. See *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998). Finally, the Court may consider matters that are subject to judicial notice. See *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986).

**\*2** In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See *Holden v. Hagopian,* 978 F.2d 1115, 1121 (9th Cir.1992).

### B. Motion to Strike

Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense." See Fed.R.Civ.P. 12(f)."[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993) (citation omitted), *rev. on other grounds,*510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).Rule 8(c) of the Federal Rules of Civil Procedure determines whether the pleading of an affirmative defense is "sufficient." *Wyshak v. City National Bank,* 607 F.2d 824, 827 (9th Cir.1979).Rule 8(c) requires that any affirmative defense must be "set forth affirmatively" in the party's responsive pleading. See Fed.R.Civ.P. 8(c). As discussed below, a defense may be found "insufficient" as a matter of pleading or as a matter of substance.

With respect to the former, the Ninth Circuit, citing *Conley v. Gibson,* has held that "[t]he key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." See *Wyshak,* 607 F.2d at 827

(citing *Conley,* 355 U.S. at 47-48). In *Conley,* the Supreme Court held that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim" but, rather, require only " 'a short and plain statement of the claim' that will give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests." See *Conley,* 355 U.S. at 47;seealso Fed.R.Civ.P. 8(a)(2) (requiring complaint to set forth "short and plain statement of the claim"); Fed.R.Civ.P. 8(b) (requiring answer to set forth defenses in "short and plain terms").

Courts that have considered whether the pleading of an affirmative defense provided "fair notice" have not required an extensive exposition of the underlying facts. In *Wyshak,* for example, the Ninth Circuit found that the defendant had given adequate notice of its statute of limitations defense by alleging in its proposed answer that "plaintiff's claims are barred by the applicable statute of limitations," and by citing, in its memorandum in support of its motion for leave to amend its answer, the particular statute setting forth the applicable statute of limitations. See id.;seealso *Allen v. A.H. Robins Co., Inc.,* 752 F.2d 1365, 1371 n. 3 (9th Cir.1985) (finding equitable estoppel defense sufficiently pleaded under Rule 8(c) where "litigant pleads all of the elements of equitable estoppel in a defensive pleading"); cf.*Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294-95 (7th Cir.1989) (affirming district court's grant of Rule 12(f) motion where affirmative defenses as pleaded contained "nothing but bare bones conclusory allegations" and "failed totally to allege the necessary elements of the alleged claims").

**\*3** With respect to substantive insufficiency, a motion to strike an affirmative defense is proper "when the defense is insufficient as a matter of law." See *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1057 (5th Cir.1982). Although Rule 12(f) motions are "generally viewed with disfavor 'because striking a portion of a pleading ... is often sought by a movant simply as a dilatory tactic,' ' an affirmative defense that " 'would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." ' See *Waste Management Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir.2001) (citation omitted). "Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings." See *Heller,* 883 F.2d at 1294.

### DISCUSSION

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 645592 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

### A. Counterclaim for Declaratory Relief

#### 1. Case or Controversy

Security moves, relying on *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731 (Fed.Cir.1988)*, to dismiss Classic's counterclaim for a declaration of invalidity of the '180 patent, on the ground that there is no case or controversy because Classic has not alleged that it has "actually either produced a potentially infringing device or has prepared to produce the device."*See id. at 736.Arrowhead* is distinguishable, however, as it addresses when a party may file a freestanding complaint for a declaratory judgment. Here, by contrast, Classic asserts its claim for declaratory relief as a counterclaim to Security's claim of patent infringement. The United States Supreme Court has held that where "a party has actually been charged with infringement of [a] patent, there is, *necessarily,* a case or controversy adequate to support jurisdiction" of a counterclaim for a declaratory judgment of invalidity. *See Cardinal Chemical Co. v. Morton International, Inc., 508 U.S. 83, 96, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)* (emphasis in original). Indeed, *Arrowhead* itself so states. *See Arrowhead, 846 F.2d at 736* (noting that if defendant to declaratory judgment claim "has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy").

Accordingly, Security's motion to dismiss the counterclaim for a declaratory judgment, based on lack of a case or controversy, will be denied.

#### 2. Failure to State a Claim

Security also argues that the counterclaim for a declaratory judgment fails to state a claim because it "is completely devoid of any factual basis as to why plaintiff's patent should be declared invalid."(*See* Motion at 2-3.) Although the Court agrees that paragraph 7 of the counterclaim is insufficiently detailed, paragraph 8 cures that defect by alleging that the '180 patent is anticipated and obvious in light of three specific patents. (*See* Counterclaim ¶ ¶ 7-8.)

Security further argues that Classic's allegation that the '180 patent is anticipated by United States Patents 5,886,644, 5,894,277 and 5,473,922 fails to state a claim. "Invalidity for anticipation requires that all of the elements and limitations of the claim are found within a single prior art reference."*See Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed.Cir.1991).*"There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention."*Id.* Security argues that "the court can see for itself by comparing the claims in the three attached patents to the counter-claim and see that there is absolutely no unanimity between the claims of the patent in suit and the prior two patents issued [to] plaintiff/counter-defendant."(*See* Motion at 4.) The Federal Circuit has held, however, that anticipation is a question of fact, and that extrinsic evidence may sometimes be necessary to educate the Court as to "what the prior reference would have meant to persons of ordinary skill in the field of the invention."*See Scripps, 927 F.2d at 1576*. The Court, which is not a person of ordinary skill in the field of the invention, declines the invitation to review the subject patents in the first instance, particularly as Security makes no attempt in its motion to compare the relevant portions of the various patents. Security's motion to dismiss Classic's counterclaim, to the extent the counterclaim alleges invalidity on a theory of anticipation, will be denied.

**\*4** Security's next argument is that Classic's counterclaim, to the extent it is based on the allegation that the '180 patent is invalid due to obviousness, fails to state a claim because the counterclaim sets forth no factual allegations supporting the claim of obviousness. Classic, however, expressly alleges that the '180 patent is invalid due to obviousness in light of United States Patents 5,886,644, 5,894,277 and 5,473,922. (*See* Counterclaim ¶ 8.) Such allegations provide Security with fair notice of the basis of the claim, and Security cites no authority for its argument that more detailed pleading is required to state a claim.

Accordingly, Security's motion to dismiss Classic's counterclaim for a declaratory judgment of invalidity of the '180 patent, for failure to state a claim, will be denied.

### B. Affirmative Defenses

Security moves, in three pages of briefing devoid of citation to any case law, to strike eleven of Classic's affirmative defenses. Classic, in its opposition, does not address these affirmative defenses on an individual basis. Such cursory briefing on behalf of both parties does not assist the Court.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 645592 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Nonetheless, the Court has independently reviewed the affirmative defenses. As to the first affirmative defense, failure to state a claim, (*see* Answer at 3), Security argues that it has set forth all of the elements of a claim for patent infringement, but fails to address its claim for unfair competition. Accordingly, Security has not shown that Classic cannot prevail on the first affirmative defense. The Court agrees, however, that the twenty-third affirmative defense, failure "to state facts sufficient to entitle plaintiff to the relief sought," (*seeid. at 8),* is duplicative of the first affirmative defense and should be stricken from the answer.

The second affirmative defense is lack of personal jurisdiction. (*Seeid. at 3.)* Security contends that Classic has waived this defense by filing a counterclaim, but cites no authority for that proposition. Nonetheless, the Ninth Circuit has held that "when a party who has appeared only as a defendant, defends and files a counterclaim, objection to personal jurisdiction is waived."*SeeSchnabel v. Lui,* 302 F.3d 1023, 1037 n. 5 (9th Cir.2002). As Classic has filed a counterclaim, it has waived any objection to personal jurisdiction and, accordingly, the Court will grant Security's motion to strike the second affirmative defense.

The sixth, seventh, fourteenth, and twenty-first affirmative defenses allege uncertainty in the allegations of the complaint. (*See* Answer at 4, 6, 7.) The sixth affirmative defense states: "[T]he complaint is uncertain as to the dates during which it alleges that the answering defendant engaged in conduct for which it should be sanctioned in the manner prayed for in the complaint."(*See* Answer at 4.) The seventh affirmative defense states: "[T]he complaint is uncertain as to whether plaintiff is alleging that he has suffered any injury as a result of this answering defendant's alleged wrongful or unlawful conduct."(*Seeid.)*The fourteenth affirmative defense states: "[T]he claims in plaintiff's complaint are uncertain in that it is impossible to determine from the complaint which of the defendant's locks allegedly manufactured, distributed, or sold by the answering defendant caused the injuries, losses, or damages alleged in said complaint."(*Seeid.* at 6.) The twenty-first affirmative defense states: "the complaint is uncertain as plaintiff failed to allege with reasonable specificity the specific conduct engaged in by this answering defendant that plaintiff believes entitles plaintiff to the relief sought by this complaint."(*Seeid.* at 7.) The Court agrees with Security that "uncertainty" is not an affirmative

defense and will grant Security's motion to strike these "affirmative defenses" from the answer. Any lack of clarity in the complaint could have been addressed, prior to filing an answer, by a motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, and may now be addressed through discovery.

**\*5** The tenth affirmative defense alleges a failure to join all indispensable parties, but fails to allege the name of any party who must be joined. The Court agrees with Security that this affirmative defense fails to provide fair notice to Security as to the factual basis for the defense, and will grant Security's motion to strike the defense from the answer.

The fifteenth affirmative defense alleges that the relief sought violates Classic's "right to protection from 'excessive fines' as provided in the Eighth Amendment of the United States Constitution and Article I, Section 17, of the Constitution of the State of California, and violates the responding defendant's right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of California."(*See* Answer at 6.) Security's briefing cites no authority for its contention that Classic cannot prevail on this affirmative defense as a matter of law. Consequently, Security's motion to strike this affirmative defense will be denied.

In the sixteenth affirmative defense, Classic states it "denies that it engaged in any fraudulent business practice as alleged in the complaint."(*See* Answer at 6-7.) The Court agrees that this statement is a denial, not an affirmative defense, and will grant Security's motion to strike it from the answer. *See* Black's Law Dictionary 451 (8th ed.2004) (stating that an "affirmative defense" assumes the truth of the opposing parties' allegations).

The nineteenth affirmative defense is that plaintiff's claims are barred by the doctrine of laches. Security argues, without citation to authority, that laches cannot apply because the patent was issued on December 2, 2003 and the subject action was filed August 2, 2004. As Security cites no authority for its argument, the Court declines to strike the nineteenth affirmative defense.

CONCLUSION

For the reasons set forth above, Security's motion is hereby GRANTED in part and DENIED in part, as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 645592 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

follows:

1. Security's motion to dismiss Classic's counterclaim for declaratory relief is DENIED.

2. Security's motion to strike the first, fifteenth, and nineteenth affirmative defenses is DENIED. Security's motion to strike the second, sixth, seventh, tenth, fourteenth, sixteenth, twenty-first, and twenty-third affirmative defenses is GRANTED.

This order terminates Docket No. 26.

IT IS SO ORDERED.

N.D.Cal.,2005.
Security People, Inc. v. Classic Woodworking, LLC
Not Reported in F.Supp.2d, 2005 WL 645592 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.